IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ANGELICA CLARK**, **ELLEN GASS**, **NATHANIEL WEST**, and **ROWAN MAHER**, individually and on behalf of all similarly situated individuals,<br><br>    Plaintiffs,<br><br>    v.<br><br>**CHAD WOLF**, Acting Secretary United States Department of Homeland Security; **KENNETH T. CUCCINELLI**, Senior Official Performing the Duties of the Deputy Secretary United States Department of Homeland Security; **GABRIEL RUSSELL,** Regional Director with the Department of Homeland Security's Federal Protective Service; **ALLEN JONES; RUSSEL BURGER; ANDREW SMITH; MARK MORGAN; RICHARD CLINE; JOHN DOE SUPERVISORY DEFENDANTS 1–60; JOHN DOE PATROL LEVEL DEFENDANTS 61–200**, agents of the U.S. Marshals Service, Federal Protective Service, U.S. Department of Homeland Security and U.S. Customs and Border Protection, acting in concert and in their Individual capacities,<br><br>    Defendants. | Case No. 3:20-cv-01436-IM<br><br>**OPINION AND ORDER** |

PAGE 1 – OPINION AND ORDER

**IMMERGUT, District Judge.**

This is a class action lawsuit[1] brought by named Plaintiffs Angelica Clark, Ellen Gass, Nathaniel West, and Rowan Maher. ECF 27. Plaintiffs allege they were subjected to unconstitutionally excessive force or unlawful detention by federal officers[2] during Portland's Black Lives Matter protests in July of 2020. Plaintiffs seek monetary damages from the federal officers sued in their individual capacities under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), for alleged violations of Plaintiffs' Fourth Amendment rights. Plaintiffs also seek a declaratory judgment against all defendants asking this Court to prohibit defendants from "indiscriminately us[ing] tear gas, shoot[ing], or beat[ing] them while they are engaged in constitutionally protected assembly, speech, and expressive conduct." ECF 27 at ¶ 127.

Before the Court is Defendants Chad Wolf and Kenneth Cuccinelli's Motion to Dismiss Plaintiffs' First Amended Complaint. ECF 48. Chad Wolf, former Acting Secretary of the Department of Homeland Security ("DHS"), and Kenneth Cuccinelli, former Senior Official Performing the Duties of Deputy DHS Secretary, argue Plaintiffs' claims should be dismissed against them pursuant to Federal Rule of Civil Procedure 12(b)(6). They argue a *Bivens* remedy is not available for Plaintiffs' constitutional claims as alleged against them because separation of powers principles caution against extending a *Bivens* remedy to this new context. Defendants

---

[1] The putative class consists of persons who, between July 1 and July 30, 2020, lawfully gathered in a specific, bounded "protest zone" who were exposed to tear gas (the "Tear Gas Class"). ECF 27 at ¶ 13. In addition to the Tear Gas Class, there are two subclasses: 1) the "Shooting Subclass"—persons who were also hit by munitions in or near the protest zone, including less-lethal munitions, tear gas canisters, and sonic grenades; and 2) the "Truncheon Subclass"—persons who were also beaten by federal law enforcement officers in or near the protest zone. *Id.* at ¶ 14. Plaintiffs have not yet asked this Court to certify the class.

[2] Defendants include Chad Wolf, Kenneth Cuccinelli, Gabriel Russell, Allen Jones, Russel Burger, Andrew Smith, Mark Morgan, Richard Cline, "John Doe Supervisory Defendants 1–60," and "John Doe Patrol Level Defendants 61–200." ECF 27.

Wolf and Cuccinelli further assert that even if this Court were to find that they could be held liable under *Bivens*, the case against them should be dismissed because they are entitled to qualified immunity. Finally, Defendants Wolf and Cuccinelli argue Plaintiffs' declaratory judgment claim must be dismissed because equitable relief is not available against a federal officer sued in his or her individual capacity. Plaintiffs' claims against all other federal officer defendants named in the suit are not at issue in this motion and remain in the case.

This Court agrees that Plaintiffs' *Bivens* claims against Defendants Wolf and Cuccinelli must be dismissed because Supreme Court precedent dictates that a *Bivens* remedy should not be recognized against Defendants Wolf and Cuccinelli under these circumstances. Further, this Court finds that Plaintiffs' claim for declaratory relief against Defendants Wolf and Cuccinelli must be dismissed as moot, as neither individual continues to hold federal office. For these reasons, Defendants Wolf and Cuccinelli's Motion to Dismiss, ECF 48, is granted.

## STANDARDS

A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts all well-pleaded factual allegations in the complaint as true and construes them in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, the court need not credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## DISCUSSION

**A.** *Bivens*

In *Bivens*, the Supreme Court recognized for the first time an implied right of action against federal officers for constitutional violations. The Court held that plaintiff Webster Bivens was entitled to sue federal agents for damages arising out of an unlawful arrest and search, in violation of his Fourth Amendment rights. *Bivens*, 403 U.S. at 389–90. In the years after *Bivens*, the Court also recognized implied rights of action under the Constitution for damages in two other contexts. *See Davis v. Passman*, 442 U.S. 228 (1979) (recognizing a damages remedy for a gender discrimination claim against a United States Congressman under the equal protection component of the Fifth Amendment Due Process Clause); *Carlson v. Green*, 446 U.S. 14 (1980) (recognizing a damages remedy against federal prison officials for failure to provide adequate medical treatment under the Eighth Amendment's Cruel and Unusual Punishment Clause).

In the four decades since these three cases were decided, the Supreme Court has repeatedly refused to add to the claims allowed under *Bivens*. *See Hernandez v. Mesa*, 140 S. Ct. 735, 742–43 (2020) (collecting cases). Recently, the Supreme Court made clear that expanding the *Bivens* remedy to any new context or category of defendants "is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (quoting *Iqbal*, 556 U.S. at 675). The Court explained that to do so constitutes a "significant step," *id.* at 1856, which risks offending separation-of-powers principles, as "Congress is the best positioned to evaluate 'whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government' based on constitutional torts." *Hernandez*, 140 S. Ct. at 742 (quoting *Abbasi*, 137 S. Ct. at 1856).

In considering possible extensions of *Bivens*, courts engage in a "two-step inquiry," "first inquir[ing] whether the request involves a claim that arises in a new context or involves a new

PAGE 4 – OPINION AND ORDER

category of defendants," and then, if so, "ask[ing] whether there are any special factors that counsel hesitation" before extending the *Bivens* remedy. *Id.* at 743 (internal citations, alterations, and quotation marks omitted). The "most important question" guiding this analysis is "who should decide whether to provide for a damages remedy, Congress or the courts?" *Id.* at 750 (quoting *Abbasi*, 137 S. Ct. at 1857) (internal quotation marks omitted).

Under this two-part framework, Defendants Wolf and Cuccinelli first assert that the *Bivens* remedy Plaintiffs seek against them arises in a new context. ECF 48 at 17–21.

The Supreme Court's understanding of a "new context" in a *Bivens* analysis is "broad." *Hernandez*, 140 S. Ct. at 743. A context is "'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court.'" *Id.* (quoting *Abbasi*, 137 S. Ct. at 1859).

As explained in *Abbasi*:

> Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

137 S. Ct. at 1859–60. The Supreme Court cautions that "even a modest extension is still an extension." *Id.* at 1864.

Here, this Court finds Plaintiffs' constitutional claims against Defendants Wolf and Cuccinelli clearly present a new *Bivens* context. *See id.* at 1865 ("[T]he new-context inquiry is easily satisfied."). The entirety of Plaintiffs' fifty-six page Amended Complaint contains only nine allegations directly involving Wolf and Cuccinelli. *See* ECF 27 at ¶¶ 7 (alleging over the

PAGE 5 – OPINION AND ORDER

month of July, at the directive of President Trump, Wolf, and Cuccinelli, "the federal government unleashed unprecedented, sustained violence and intimidation on the people of Portland"), 43–44 (alleging that, in response to President Trump's issuance of Executive Order 13933, Defendant Wolf created the "Protecting American Communities Task Force," which in turn led to the deployment of federal law enforcement officers to Portland as part of "Operation Diligent Valor"), 46 (quoting Defendant Wolf as stating "we will leverage every tool and authority in our arsenal to make sure [federal] landmarks remain intact . . ."), 51 (alleging Defendant Cuccinelli sent an email to Defendant Wolf describing a temporary restraining order entered against federal officers in Portland in July 2020 as "offensive" but noting it "shouldn't affect anything we're doing"), 61 (alleging "[o]n information and belief" Defendants Wolf and Cuccinelli, among others, "knew that federal agents routinely left federal property to engage in crowd control" and that such instances often occurred without issuance of warnings or dispersal orders and "in circumstances in which federal agents were without lawful authority to issue such orders"), 69–70 (describing public remarks made by Defendants Wolf and Cuccinelli on July 16, 17, and 21, 2020 regarding the increased presence of federal law enforcement officers in Portland), 80 (describing Defendant Wolf's July 29, 2020 statement that "DHS [would] continue to maintain [its] current, augmented federal law enforcement personnel in Portland until [it is] assured that the Hatfield Federal Courthouse and other federal properties will no longer be attacked and that the seat of justice in Portland will remain secure").³

---

³ This Court declines to summarily attribute Plaintiffs' allegations involving "Supervisory Defendants" to Defendants Wolf and Cuccinelli, *see, e.g.,* ECF 27 at ¶¶ 62–67, 119, particularly in a *Bivens* action where "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her *own misconduct*," *Iqbal*, 556 U.S. at 677 (emphasis added); *see also Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982) ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.") (citations omitted).

PAGE 6 – OPINION AND ORDER

Plaintiffs do not allege that either Wolf or Cuccinelli personally seized them with excessive force or detained them without probable cause in violation of the Fourth Amendment. Further, Plaintiffs offer no specific connection between Wolf or Cuccinelli and the actions of any rank-and-file federal officers who directly caused Plaintiffs' alleged constitutional injuries. Instead, Plaintiffs merely describe Defendant Wolf's role in sending federal officers to Portland in July of 2020 as part of Operation Diligent Valor, and public and private statements Defendants Wolf and Cuccinelli ostensibly made in support of this initiative.

These allegations amount to an attempt to hold senior Executive Branch officials individually liable for their high-level role in coordinating and overseeing "Operation Diligent Valor." In essence, Plaintiffs try to use *Bivens* to challenge an Executive Branch policy. *Cf. Abbasi*, 137 S. Ct. at 1852–53, 1860–63 (refusing to extend a *Bivens* remedy to plaintiffs' claims against former Attorney General John Ashcroft, former FBI Director Robert Mueller, and former Immigration and Naturalization Service Commissioner James Ziglar brought by persons detained pursuant to a post-September 11 "hold-until-cleared" national security policy in part because a *Bivens* action is not a "proper vehicle for altering an entity's policy") (quotation marks and citation omitted); *Mejia-Mejia v. U.S. Immigr. & Customs Enf't*, No. 18-1445 (PLF), 2019 WL 4707150, at *3–6 (D.D.C. Sept. 26, 2019) (dismissing plaintiff's *Bivens* action against former Attorney General Jeff Sessions and former director of the U.S. Office of Refugee Resettlement Scott Lloyd, which challenged the decision to forcibly separate the plaintiff from her son during their pre-asylum detention pursuant to the Executive Branch's "Zero Tolerance" immigration policy, because it amounted to a "collateral challenge to a government-wide policy").

The facts and legal theory of the claims against Defendants Wolf and Cuccinelli thus differ meaningfully from those of the original three *Bivens* cases. *See Abbasi*, 137 S. Ct. at 1854–

55 (summarizing the three cases). Defendants here—the former DHS Secretary, who served as a Cabinet member and one of the nation's top law-enforcement officials, and the Senior Official Performing the Duties of the Deputy DHS Secretary—are both high-level Executive Branch officials creating and carrying out Executive Branch policy. No prior Supreme Court case has recognized a *Bivens* action in this context.

Because Plaintiffs assert claims that arise in a new context, this Court must conduct a special factors analysis to determine whether to extend a *Bivens* remedy to their claims. The Supreme Court made "clear that a *Bivens* remedy will not be available if there are 'special factors counseling hesitation in the absence of affirmative action by Congress.'" *Id.* at 1857 (quoting *Carlson*, 446 U.S. at 18). Defendants Wolf and Cuccinelli argue numerous special factors counsel hesitation in this case. ECF 48 at 21–34.

The Supreme Court has not provided an exhaustive list of factors, but it has advised courts to consider "the risk of interfering with the authority of the other branches," whether "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy," and "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Hernandez*, 140 S. Ct. at 743 (internal citations and quotation marks omitted). If any factors give this Court "reason to pause before applying *Bivens* in a new context," the Court must decline to do so. *Id.*; *see also Abbasi*, 137 S. Ct. at 1858 ("[I]f there are sound reasons . . . the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III.").

This Court finds that Plaintiffs' claims against Defendants Wolf and Cuccinelli present "special factors" counseling against extending *Bivens* to the circumstances of this case. Most

notably, *Bivens* suits are not appropriate mechanisms to litigate objections to government policies with widespread applicability. *See Abbasi*, 137 S. Ct. at 1860; *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)) (explaining that a *Bivens* action is not a "proper vehicle for altering an entity's policy"). Further, extending *Bivens* remedies to claims against individuals who lack a direct and particularized connection to Plaintiffs' harms would undermine the purpose of *Bivens* liability—"to deter individual federal officers from committing constitutional violations." *Malesko*, 534 U.S. at 70. "*Bivens* is not designed to hold officers responsible for acts of their subordinates." *Abbasi*, 137 S. Ct. at 1860.

Additionally, extending *Bivens* to the types of policy challenges alleged here would substantially affect government operations and impose an undue burden on high-level officials who must defend against these types of suits in their personal capacities. Entertaining such claims might preclude them "from devoting the time and effort required for the proper discharge of their duties." *Id*. Similarly, if the courts were to entertain such challenges, the discovery and litigation process would inevitably "border upon or directly implicate the discussion and deliberations that led to the formation of the policy in question," thus intruding on the "sensitive functions of the Executive Branch." *Id.* at 1860–61. This in turn could dampen the candor of conversations and advice given between Executive Branch officials. *Cf. Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 360 (1979) (noting that disclosure of Executive Branch documents "could inhibit the free flow of advice, including analysis, reports, and expression of opinion within the agency"). These considerations counsel caution before allowing a damages claim to proceed against Defendants Wolf and Cuccinelli.

In short, various factors[4] in this case suggest Congress is the more appropriate body to weigh the costs and benefits of allowing for, and setting the limits of, the remedy Plaintiffs seek against Defendants Wolf and Cuccinelli. Because there are "sound reasons to think Congress might doubt the efficacy or necessity of [the] damages remedy" Plaintiffs seek, this Court must refrain from creating one. *Abbasi*, 137 S. Ct. at 1858. Plaintiffs' *Bivens* claims against Defendants Wolf and Cuccinelli must be dismissed. Accordingly, the Court declines to reach Defendants' qualified immunity arguments.

**B. Declaratory Relief**

Defendants next argue that Plaintiffs' request for a declaratory judgment should be dismissed as to them because equitable relief is not available against a federal officer sued in his or her individual capacity. ECF 48 at 44. Plaintiffs contend the Declaratory Judgment Act independently provides the basis for Plaintiffs' sought remedy. ECF 55 at 42. This Court declines to address the parties' arguments because, regardless, Plaintiffs' declaratory relief claim against Defendants Wolf and Cuccinelli is now moot.

Plaintiffs seek "a declaration that the conduct in which Defendants Wolf and Cuccinelli engaged violated the constitutional rights of Plaintiffs and members of the putative class." *Id.* at

---

[4] Although not dispositive to this Court's decision, this Court also finds that Plaintiffs had alternative processes by which to pursue their claims. *See Hernandez*, 140 S. Ct. at 750 & n.12 (explaining the "existence of alternative remedies [is] merely a further reason not to create *Bivens* liability"). For example, to challenge the constitutionality of the government action at issue here, Plaintiffs could have pursued injunctive relief against the relevant agencies and government officials in their official capacities. It is the availability of the avenue, not the ultimate success of claims that may be pursued through that avenue, which counsels against an extension of *Bivens*. *See Abbasi*, 137 S. Ct. at 1862 (declining to imply a *Bivens* remedy where plaintiffs challenged large-scale detention policy decisions in part because plaintiffs could have sought injunctive relief to address those decisions, not because they successfully did so); *Vega v. United States*, 881 F.3d 1146, 1155 (9th Cir. 2018) ("That [plaintiff's] state law claims ultimately failed to satisfy the requirements of [state] law, or federal pleading standards, does not mean that he did not have access to alternative or meaningful remedies.").

41–42. "However, a declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017). "The 'value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.*'" *Id.* (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)) (emphasis in original). Neither Wolf nor Cuccinelli currently holds federal office or exercises any control over future federal law enforcement operations. *See* ECF 68 at 32. Absent any indication that a substantial controversy of sufficient immediacy and reality continues to exist between Plaintiffs and Defendants Wolf and Cuccinelli, this Court has no jurisdiction over Plaintiffs' claim for declaratory relief against them. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *see also Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1382–83 (9th Cir. 1988) ("The Declaratory Judgment Act merely creates a remedy in cases otherwise within the court's jurisdiction; it does not constitute an independent basis for jurisdiction.") (citation omitted).

## CONCLUSION

For the foregoing reasons, Defendants Wolf and Cuccinelli's Motion to Dismiss, ECF 48, is GRANTED. Plaintiffs' *Bivens* claims against Wolf and Cuccinelli are DISMISSED for failure to state a claim. Plaintiffs' claim for declaratory relief against Wolf and Cuccinelli is DISMISSED as moot.

**IT IS SO ORDERED**.

DATED this 10th day of June, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

PAGE 11 – OPINION AND ORDER