BRIAN M. BOYNTON
Acting Assistant Attorney General
SCOTT ERIK ASPHAUG
Acting United States Attorney
C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch
ANDREA W. MCCARTHY
Senior Trial Counsel
GLENN S. GREENE
(New York State Bar No. 2674448)
Senior Trial Attorney
U.S. Department of Justice, Civil Division
Constitutional and Specialized Tort Litigation
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4143
Fax: (202) 616-4314

*Attorneys for Defendants Burger, Cline,*
*Jones, Morgan, Russell, and Smith*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| ANGELICA CLARK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CHAD WOLF, Acting Secretary United States Department of Homeland Security, *et al.*,<br><br>Defendants. | Case No. 3:20-cv-01436-IM<br><br>**MOTION OF DEFENDANTS BURGER, CLINE, JONES, MORGAN, RUSSELL, AND SMITH TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF**<br><br>**Oral Argument Requested** |

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF

## MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Russel Burger, Richard Cline, Allen Jones, Mark Morgan, Gabriel Russell, and Andrew Smith respectfully move for an order dismissing *all* of the Claims for Relief asserted against them in Plaintiffs' Second Amended Complaint. The Defendants' motion is based upon the following Memorandum in Support.

## LR 7-1 CERTIFICATION

Counsel for Defendants Burger, Cline, Jones, Morgan, Russell, and Smith certifies that in compliance with Local Rule 7-1(a), the parties conferred on this motion and were unable to resolve the disputes at issue therein.

BRIAN M. BOYNTON
Acting Assistant Attorney General
SCOTT ERIK ASPHAUG
Acting United States Attorney
C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch
ANDREA W. MCCARTHY
Senior Trial Counsel
GLENN S. GREENE
(New York State Bar No. 2674448)
Senior Trial Attorney
U.S. Department of Justice, Civil Division
Constitutional and Specialized Tort Litigation
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4143
Fax: (202) 616-4314

*Attorneys for Defendants Burger, Cline,*
*Jones, Morgan, Russell, and Smith*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| ANGELICA CLARK, *et al.*, | Case No. 3:20-cv-01436-IM |
| Plaintiffs, | |
| v. | **MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS BURGER, CLINE, JONES, MORGAN, RUSSELL, AND SMITH TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |
| CHAD WOLF, Acting Secretary United States Department of Homeland Security, *et al.*, | |
| Defendants. | |

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................................................v

INTRODUCTION ........................................................................................................1

FACTUAL BACKGROUND ........................................................................................2

LEGAL STANDARD ...................................................................................................4

ARGUMENT ...............................................................................................................4

I.    A   *BIVENS*   REMEDY   IS   NOT   AVAILABLE   FOR   PLAINTIFFS'
      CONSTITUTIONAL CLAIMS ...........................................................................4

      A.    *Bivens* is a disfavored extra-statutory remedy. ....................................5

      B.    *Bivens* should not be extended into the new context presented here. ..............7

      C.    Special factors preclude a *Bivens* remedy in this case....................................12

            1.    *Bivens* should not be extended to challenges to high-level policy
                  decisions...............................................................................................13

            2.    Significant practical concerns counsel against a *Bivens* remedy..........16

            3.    The availability of alternative avenues for relief precludes a new *Bivens*
                  remedy....................................................................................................23

II.   THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.................26

      A.    The Framework Of The Qualified Immunity Defense.....................................27

      B.    Plaintiffs Fail To Sufficiently Allege The Personal Participation Of Any Of
            The Defendants In A Violation Of Any Clearly Established Constitutional
            Right. .................................................................................................................28

CONCLUSION.............................................................................................................35

# TABLE OF AUTHORITIES

## Cases

*Adderley v. Florida,*
   385 U.S. 39 (1966) .................................................................................................10, 11, 21

*Alberto-Toledo v. Washington Cnty.,*
   No. 3:20-CV-01557-MC, 2021 WL 3007256 (D. Or. July 15, 2021) ..................................25

*Aldabe v. Aldabe,*
   616 F.2d 1089 (9th Cir. 1980) ........................................................................................27

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.,*
   301 F.R.D. 487 (C.D. Cal. 2014) ....................................................................................34

*Anderson v. Creighton,*
   483 U.S. 635 (1987) .......................................................................................................28

*Arar v. Ashcroft,*
   585 F.3d 559 (2d Cir. 2009) ...........................................................................................13

*Ashcroft v. al-Kidd,*
   563 U.S. 731 (2011) ...........................................................................................27, 28, 32

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..................................................................................................passim

*Barren v. Harrington,*
   152 F.3d 1193 (9th Cir. 1998) ........................................................................................27

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ..............................................................................................4, 34, 35

*Bernini v. City of St. Paul,*
   665 F.3d 997 (8th Cir. 2012) ..........................................................................................31

*Bistrian v. Levi,*
   912 F.3d 79 (3d Cir. 2018) .............................................................................................23

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
   403 U.S. 388 (1971) ...............................................................................................1, 5, 8

*Blackwell v. United States,*
   No. CV 15-08968 PA (AFM), 2019 WL 8953363 (C.D. Cal. Dec. 9, 2019) .....................8

*Boule v. Egbert,*
   998 F.3d 370 (9th Cir. 2021) ..........................................................................................24

*Brosseau v. Haugen,*
   543 U.S. 194 (2004) .......................................................................................................28

*Bruner v. Dunaway,*
   684 F.2d 422 (6th Cir. 1982) ..........................................................................................33

*Byrd v. Lamb,*
   990 F.3d 879 (5th Cir. 2021) ............................................................................................7

*Camreta v. Greene,*
   563 U.S. 692 (2011) .......................................................................................................26

*Cantu v. Moody,*
    933 F.3d 414 (5th Cir. 2019) ........................................................................................25

*Carlson v. Green,*
    446 U.S. 14 (1980) ...............................................................................................5, 24

*Caviness v. Horizon Cmty. Learning Ctr., Inc.,*
    590 F.3d 806 (9th Cir. 2010) ........................................................................................4

*Chappell v. Wallace,*
    462 U.S. 296 (1983) ...................................................................................................19

*Cheney v. U.S. Dist. Court for D.C.,*
    542 U.S. 367 (2004) ...................................................................................................19

*Chuman v. Wright,*
    76 F.3d 292 (9th Cir. 1996) ...................................................................................27, 30

*Clark v. Cmty. for Creative Non-Violence,*
    468 U.S. 288 (1984) ...................................................................................................22

*Clark v. Wolf,*
    No. 3:20-cv-01436-IM, 2021 WL 2386115 (D. Or. June 10, 2021) .................................passim

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,*
    473 U.S. 788 (1985) ...................................................................................................21

*Corr. Servs. Corp. v. Malesko,*
    534 U.S. 61 (2001) ...............................................................................................passim

*Cox v. Louisiana,*
    379 U.S. 536 (1965) ...................................................................................................21

*Cox v. New Hampshire,*
    312 U.S. 569 (1941) ...................................................................................................11

*Crawford-El v. Britton,*
    523 U.S. 574 (1998) ...................................................................................................18

*Cunningham v. Gates,*
    229 F.3d 1271 (9th Cir. 2000) ....................................................................................33

*Daniels-Hall v. Nat'l Educ. Ass'n,*
    629 F.3d 992 (9th Cir. 2010) .....................................................................................2, 3

*Davis v. Passman,*
    442 U.S. 228 (1979) .....................................................................................................5

*Davis v. Scherer,*
    468 U.S. 183 (1984) ...................................................................................................33

*District of Columbia v. Wesby,*
    138 S. Ct. 577 (2018) .................................................................................................28

*Farah v. Weyker,*
    926 F.3d 492 (8th Cir. 2019) ................................................................................10, 12

*Fazaga v. Fed. Bureau of Investigation,*
    965 F.3d 1015 (9th Cir. 2020) ......................................................................................6

*Felarca v. Birgeneau*,
   891 F.3d 809 (9th Cir. 2018) ............................................................... 32, 33

*Graham v. Connor*,
   490 U.S. 386 (1989) ................................................................................... 31

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ................................................................................... 27

*Hernandez v. Mesa*,
   137 S. Ct. 2003 (2017) ........................................................................... 6, 26

*Hernandez v. Mesa*,
   140 S. Ct. 735 (2020) ........................................................................... 6, 7, 8

*Idaho v. Coeur d'Alene Tribe of Idaho*,
   521 U.S. 261 (1997) ................................................................................... 13

*Index Newspapers LLC v. U.S. Marshals Serv.*,
   977 F.3d 817 (9th Cir. 2020) ................................................................. 1, 31

*Ioane v. Hodges*,
   939 F.3d 945 (9th Cir. 2018) ...................................................................... 9

*Ivey v. Bd. of Regents of the Univ. of Alaska*,
   673 F.2d 266 (9th Cir. 1982) .................................................................... 35

*Jackson v. City of Bremerton*,
   268 F.3d 646 (9th Cir. 2001) .................................................................... 30

*K.O. v. ICE*,
   468 F. Supp. 3d 350 (D.D.C. 2020) .................................................... 18, 20

*Kisela v. Hughes*,
   138 S. Ct. 1148 (2018) .............................................................................. 28

*Koala v. Khosla*,
   931 F.3d 887 (9th Cir. 2019) .................................................................... 11

*Lanuza v. Love*,
   899 F.3d 1019 (9th Cir. 2018) ............................................................... 9, 14

*Lebron v. Rumsfeld*,
   670 F.3d 540 (4th Cir. 2012) .............................................................. 16, 18

*Lillemoe v. U.S. Dep't of Agric., Foreign Agric. Serv.*,
   344 F. Supp. 3d 215 (D.D.C. 2018) .......................................................... 20

*Loumiet v. United States*,
   948 F.3d 376 (D.C. Cir. 2020) ........................................................... passim

*Lyall v. City of Los Angeles*,
   807 F.3d 1178 (9th Cir. 2015) .................................................................. 31

*Malley v. Briggs*,
   475 U.S. 335 (1986) ................................................................................... 27

*Mejia Mejia v. ICE*,
   No. 18-1445 (PLF), 2019 WL 4707150 (D.D.C. Sept. 26, 2019) ....... 12, 15, 20, 23

*Meshal v. Higgenbotham,*
   804 F.3d 417 (D.C. Cir. 2015) ............................................................................... 16, 21

*Minneci v. Pollard,*
   565 U.S. 118 (2012) ....................................................................................................24

*Occupy Eugene v. U.S. Gen. Servs. Admin., No. 6:12-CV-02286-MC,*
   2013 WL 6331013 (D. Or. Dec. 3, 2013).....................................................................24

*Oliva v. Nivar,*
   973 F.3d 438 (5th Cir. 2020) ......................................................................................24

*Oliveras v. Basile,*
   440 F. Supp. 3d 365 (S.D.N.Y. 2020)..........................................................................25

*Pereira Luna v. Thomas,*
   No. 2:19-CV-00431-JFW (AFM), 2020 WL 473133 (C.D. Cal. Jan. 28, 2020)...................8

*Priest v. Holbrook,*
   848 F. App'x 259 (9th Cir. 2021) ................................................................................27

*Quaker Action Grp. v. Hickel,*
   421 F.2d 1111 (D.C. Cir. 1969) ..................................................................................10

*Reid v. United States,*
   825 F. App'x 442 (9th Cir. 2020) .................................................................................9

*Rosebrock v. Beiter,*
   788 F. Supp. 2d 1127 (C.D. Cal. 2011) ......................................................................11

*Schwarz v. Meinberg,*
   761 F. App'x 732 (9th Cir. 2019) ...............................................................15, 19, 24

*Solis v. City of Fresno,*
   No. 1:11-CV-00053 AWI GSA, 2012 WL 868681 (E.D. Cal. Mar. 13, 2012) ................34

*Starr v. Baca,*
   652 F.3d 1202 (9th Cir. 2011)....................................................................................30

*Talk Radio Network Enterprises v. Cumulus Media Inc.,*
   271 F. Supp. 3d 1195 (D. Or. 2017) ...........................................................................34

*Tennessee v. Garner,*
   471 U.S. 1 (1985) .......................................................................................................31

*Terrell v. Brewer,*
   935 F.2d 1015 (9th Cir. 1991)....................................................................................27

*Torres v. City of Los Angeles,*
   548 F.3d 1197 (9th Cir. 2008).....................................................................................33

*United States v. Allen,*
   760 F.2d 447 (2d Cir. 1985) .......................................................................................11

*United States v. Grace,*
   461 U.S. 171 (1983) .............................................................................................11, 21

*United States v. Griefen,*
   200 F.3d 1256 (9th Cir. 2000).....................................................................................11

*United States v. Stanley,*
  483 U.S. 669 (1987) ..................................................................................18
*Vanderklok v. United States,*
  868 F.3d 189 (3d Cir. 2017) ................................................................20, 25
*Vega v. United States,*
  881 F.3d 1146 (9th Cir. 2018) .............................................................24, 25
*W. Radio Servs. Co. v. U.S. Forest Serv.,*
  578 F.3d 1116 (9th Cir. 2009) ...................................................................24
*Wilkie v. Robbins,*
  551 U.S. 537 (2007) ..............................................................11, 23, 24, 25
*Wilson v. Libby,*
  535 F.3d 697 (D.C. Cir. 2008) ...................................................................18
*Wood v. Moss,*
  572 U.S. 744 (2014) ......................................................................10, 19, 28
*Zavala v. Rios,*
  721 F. App'x 720 (9th Cir. 2018) .........................................................14, 15
*Ziglar v. Abbasi,*
  137 S. Ct. 1843 (2017) ........................................................................passim

**Statutes**

5 U.S.C. App. 3 § 3 ........................................................................................25
6 U.S.C. § 345 ...............................................................................................25
6 U.S.C. § 611(b)(1)(G) .................................................................................25
6 U.S.C. § 613(d)(3) ......................................................................................25
18 U.S.C. § 2 .................................................................................................13
18 U.S.C. § 371 .............................................................................................13
18 U.S.C. § 1361 .......................................................................................9, 13
18 U.S.C. § 1369 ...........................................................................................13
18 U.S.C. § 2101 ...........................................................................................13
18 U.S.C. § 2339A .........................................................................................13
28 U.S.C. § 1346(b) .......................................................................................24
28 U.S.C. § 2671-80 ......................................................................................24
28 U.S.C. § 2680(a) .......................................................................................16
28 U.S.C. §§ 241-42 ......................................................................................26
40 U.S.C. § 1315 .......................................................................................9, 13
54 U.S.C. § 100722 ........................................................................................13

**Regulations**

85 Fed. Reg. 40,081 ...............................................................................3, 10, 13
86 Fed. Reg. 27,025 .......................................................................................3

## INTRODUCTION

Following the death of George Floyd at the hands of Minneapolis police, large demonstra-

tions broke out across the country. Many of the protests were peaceful, but several localities experi-

enced violence and property destruction. One of those localities is Portland, Oregon, where numer-

ous federal properties were targeted by vandalism and arson. As the Ninth Circuit observed in a case

challenging aspects of the law enforcement response to the Portland protests,

> Most of the [Portland] protests have been peaceful, but some have become violent.
> There have been incidents of vandalism, destruction of property, looting, arson, and
> assault, particularly late at night.

*Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 821 (9th Cir. 2020). Plaintiffs bring this

civil lawsuit on behalf of themselves and others who were allegedly detained without probable cause

and subjected to excessive force while in a "protest zone" in Downtown Portland between July 1

and July 30, 2020. Invoking the limited remedy first recognized by the Supreme Court in *Bivens v. Six

Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), Plaintiffs seek to recover

money damages under the Fourth Amendment from the personal assets of Gabriel Russell, Regional

Director, Region 10, Federal Protective Service ("FPS"); Allen Scott Jones, Deputy Director of Op-

erations, FPS; Richard Cline, Principal Deputy Director, FPS; Mark Morgan, former Acting Com-

missioner, U.S. Customs and Border Protection ("CBP"); Russel Burger, former United States Mar-

shal, United States Marshals Service ("USMS"); and Andrew Smith, Assistant Director for Tactical

Operations, USMS (collectively, the "Defendants"), for their alleged role in Plaintiffs' injuries.

The Court recently rejected Plaintiffs' request for a similar *Bivens* remedy in this exact con-

text. *See Clark v. Wolf*, No. 3:20-cv-01436-IM, 2021 WL 2386115 (D. Or. June 10, 2021). The Court

held that identical Fourth Amendment claims asserting the direct and supervisory liability of former

Acting Department of Homeland Security ("DHS") Secretary Chad Wolf and former Deputy DHS

Secretary Kenneth Cuccinelli for Plaintiffs' alleged injuries arose in a context in which the Supreme

Court has never recognized a *Bivens* remedy. *Clark*, 2021 WL 2386115, at *5. The Court found further that there were "sound reasons to think Congress might doubt the efficacy or necessity of [the] damages remedy" Plaintiffs seek here. *Id.* (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1858 (2017). Specifically, the Court recognized that: 1) *Bivens* suits are not appropriate mechanisms to litigate Plaintiffs' objections to government policies with widespread applicability; 2) extending *Bivens* remedies to claims against individuals who lack a direct and particularized connection to Plaintiffs' harms would undermine the purpose of *Bivens* liability—to deter individual federal officers from committing constitutional violations; and 3) extending *Bivens* to the types of policy challenges alleged by Plaintiffs would substantially affect government operations and impose an undue burden on high-level officials who must defend against these types of suits in their personal capacities. *Id.* at *5.

These same considerations compel dismissal of Plaintiffs' Fourth Amendment claims against the supervisory defendants named here. Just as the Court found with respect to the claims asserted against Defendants Wolf and Cuccinelli, "various [special] factors in this case suggest Congress is the more appropriate body to weigh the costs and benefits of allowing for, and setting the limits of, the [*Bivens*] remedy Plaintiffs seek" against Defendants Burger, Cline, Jones, Morgan, Russell, and Smith. *Id.* In the alternative, even if the Court were to recognize a *Bivens* remedy where none has been permitted before, the Defendants are entitled to qualified immunity.

## FACTUAL BACKGROUND[1]

Protests in Portland, Oregon, in response to the death of George Floyd began in May 2020, and according to Plaintiffs, were continuous every night through the date on which their initial complaint was filed. Second Amended Complaint ("SAC") ¶ 53. In the month of July 2020, demonstra-

---

[1] To the extent they are well-pleaded, Plaintiffs' allegations are assumed to be true for the purposes of this motion only. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 995 n.1 (9th Cir. 2010).

tors tended to merge and gather into the evenings around the United States Courthouse in down-town Portland (the "Hatfield Courthouse") and the three park blocks directly west of the court-house, as well as the Multnomah County Justice Center to the south. *Id.*

On June 26, 2020, then-President Donald J. Trump issued Executive Order 13933, to deploy federal law enforcement agents to Portland. *Id.* ¶ 5; *see* 85 Fed. Reg. 40,081, *revoked*, Executive Order 14029, 86 Fed. Reg. 27,025 (May 14, 2021). The stated purpose of the deployment was to protect federal property and personnel. SAC ¶ 7. Federal law enforcement agents deployed to Portland on July 1, 2020. *Id.* ¶ 56. Plaintiffs claim that since their arrival in Portland, federal agents have acted "with the apparent purpose of quelling lawful protests in support of Black lives rather than protect-ing federal property." *Id.* ¶ 57.

The named Plaintiffs—Angelica Clark, Ellen Gass, Nathaniel West, Rowan Maher, Garrison Davis, and Robert Evans—allege that they and similarly situated individuals (puta-tive "class members") gathered near the Hatfield Courthouse to protest police violence. *Id.* ¶ 19. Plaintiffs Clark, Gass, West, Maher, Davis, and Evans were allegedly exposed to and in-jured by tear gas on one or more occasions in July 2020 during protests they attended. *See generally id.* ¶¶ 104, 106-111. Plaintiff West further alleges he was harmed by stun grenades which detonated close to him. *Id.* ¶ 108. Plaintiffs Clark, Gass, Maher, Davis, and Evans each allege they were injured by munitions. *Id.* ¶¶ 106-07, 109-11. Plaintiff Maher also alleges that she was beaten with a baton. *Id.* ¶ 109.

Plaintiffs seek damages under *Bivens* for the violation of their Fourth Amendment rights when they were subjected to unreasonable uses of force, *id.* ¶¶ 113-23, 130-37, and un-lawful arrest or detention, *id.* ¶¶ 124-29.

## LEGAL STANDARD

Dismissal is required under Rule 12(b)(6) when a plaintiff fails to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Although the Court assumes the truth of well-pleaded factual allegations in ruling on a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' [of a claim] . . . are conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 681 (citations omitted).

## ARGUMENT

### I.    A *BIVENS* REMEDY IS NOT AVAILABLE FOR PLAINTIFFS' CONSTITUTIONAL CLAIMS

The Supreme Court has repeatedly warned that "a *Bivens* action is not a proper vehicle for altering an entity's policy" and is "not designed to hold officers responsible for acts of their subordinates." *Abbasi*, 137 S. Ct. at 1849, 1860 (internal quotation marks and citations omitted). Plaintiffs' *Bivens* action ignores both warnings. As was the case with their claims against Defendants Wolf and Cuccinelli, *see Clark*, 2021 WL 2386115, at *4, Plaintiffs do not allege that Defendants Burger, Cline, Jones, Morgan, Russell or Smith, were personally involved in any of the physical acts that caused Plaintiffs' claimed injuries. Yet Plaintiffs nevertheless seek to hold each of these Defendants personally liable for damages allegedly resulting from policy decisions associated with the deployment of federal officers to and within Portland to protect federal property and personnel in the midst of civil

unrest, and injuries Plaintiffs allegedly suffered at the hands of those other officers. As shown below, and in accordance with *Clark* and the Supreme Court's repeated "refus[al] to extend *Bivens* to any new context or new category of defendants," this Court should refuse an extension of *Bivens* that imposes personal liability on federal officials, such as the Defendants here, through a suit effectively aimed at altering federal policy, and improperly imposing respondeat superior liability on high-level federal officials. *Abbasi*, 137 S. Ct. at 1857 (internal quotation marks and citations omitted); *see Clark*, 2021 WL 2386115, at *5.

> A.    ***Bivens*** **is a disfavored extra-statutory remedy**.

In *Bivens*, the Supreme Court recognized for the first time an implied right of action for damages against federal officers alleged to have violated a plaintiff's Fourth Amendment rights. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). The Court allowed the victim of the alleged violation to sue for damages—even though Congress had not expressly provided for such a cause of action— because Congress had not explicitly foreclosed a damages remedy and there were no "special factors" counseling the Judiciary to hesitate in recognizing one in the face of congressional silence. *Bivens*, 403 U.S. at 396-97. The Court subsequently recognized an implied damages remedy in *Davis v. Passman*, 442 U.S. 228 (1979), and in *Carlson v. Green*, 446 U.S. 14 (1980)—in both cases specifically determining that there were no special factors counseling against recognition of a remedy. To date, *Bivens*, *Davis*, and *Carlson* remain the *only* instances in which the Supreme Court has approved such a remedy. As this Court recognized, "the Supreme Court [has] made clear that expanding the *Bivens* remedy to any new context or category of defendants "is now a 'disfavored' judicial activity." *Clark*, 2021 WL 2386115, at *2 (quoting *Abbasi*, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675)). Indeed, the Supreme Court has observed that the extension of *Bivens* is now so disfavored that *Bivens* itself, as well as *Davis* and *Carlson*, might have different outcomes if they were decided today. *Abbasi,* 137 S. Ct. at 1856.

The threshold question that must be asked in any case in which a *Bivens* remedy is sought is whether the court should create a new freestanding damages remedy under the Constitution. *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017). The Supreme Court's answer to this question—in a variety of contexts over the past forty years—has been frequent and unequivocal: No. *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (collecting cases). Accordingly, the Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants," *Malesko*, 534 U.S. at 68, explaining that the arguments underpinning *Bivens* have "los[t] their force," *Abbasi*, 137 S. Ct. at 1855; *see also Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1055 (9th Cir. 2020) (noting that "the availability of *Bivens* actions for new claims and contexts" is now "severely restricted") (citing *Abbasi*, 137 S. Ct. at 1856-57), *cert. granted sub nom. Fed. Bureau of Investigation v. Fazaga*, No. 20-828, 2021 WL 2301971 (U.S. June 7, 2021).

The Supreme Court's retreat from *Bivens* reflects appropriate respect for the "separation-of-powers," which means that the creation of damages claims should be "committed to those who write the laws rather than those who interpret them." *Abbasi*, 137 S. Ct. at 1857 (quotation marks and citations omitted). As this Court acknowledged in *Clark*, "[t]he 'most important question' guiding th[e] analysis [of whether to extend *Bivens*] is 'who should decide whether to provide for a damages remedy, Congress or the courts?'" *Clark*, 2021 WL 2386115, at *2 (quoting *Hernandez*, 140 S. Ct. at 750 (quoting *Abbasi*, 137 S. Ct. at 1857) (internal quotation marks omitted)). "[I]t is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." *Abbasi*, 137 S. Ct. at 1856. "Congress," not the Judiciary, "is best positioned to evaluate 'whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government' based on constitutional torts." *Hernandez*, 140 S. Ct. at 742 (quoting *Abbasi*, 137 S. Ct. at 1856). "[J]udges are

not well-suited" to decide "how to balance these competing considerations in various contexts." *Loumiet v. United States*, 948 F.3d 376, 381 (D.C. Cir. 2020). As shown below, this Court, in accordance with the Supreme Court's guidance and *Clark*, should decline Plaintiffs' request for an unprecedented expansion of *Bivens* here.

### B.    *Bivens* should not be extended into the new context presented here.

Because *Bivens* is both a limited and disfavored remedy, the first question the Court must ask before potentially imposing new liability on the high-level federal officials sued here is whether Plaintiffs' claims arise in a new *Bivens* context. *Abbasi*, 137 S. Ct. at 1864; *accord id.* at 1860. A case presents a new context when it differs "in a meaningful way" from *Bivens*, *Davis*, and *Carlson*—the only three cases in which the *Supreme Court* has recognized a *Bivens* remedy. *Id.* at 1859. Lower-court decisions extending *Bivens* have now been "overtaken" by *Abbasi*'s holding that "the new-context analysis may consider *only* Supreme Court decisions approving *Bivens* actions." *Loumiet*, 948 F.3d at 382 (emphasis added). Moreover, the Supreme Court's understanding of a "new context" is "broad." *Hernandez*, 140 S. Ct. at 743. In *Abbasi*, the Court provided numerous examples of the ways in which a case might meaningfully differ from *Bivens*, *Davis*, and *Carlson*. *Abbasi*, 137 S. Ct. at 1860 (listing seven non-exhaustive factors). Even a case with "significant parallels" to one of these three cases, or a case presenting just a "modest extension" of one of them, "is still an extension" into a brand-new context. *Id.* at 1864. Essentially, "*Bivens* claims are limited to three situations . . . [v]irtually everything else is a new context." *Byrd v. Lamb*, 990 F.3d 879, 882 (5th Cir. 2021).

As the Court has already determined, the *Bivens* remedy Plaintiffs seek here implicates a variety of factors indicative of a new context, and broadly and meaningfully differs from the only three cases in which the Supreme Court has recognized a *Bivens* remedy. *See Clark*, 2021 WL 2386115, at *3-4. In their Claims for Relief, Plaintiffs allege that their Fourth Amendment rights were violated when they were seized by excessive physical force and/or detained without probable cause. SAC ¶¶

113-37. While *Bivens* itself was a Fourth Amendment case, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743 (collecting cases). Notably, the Supreme Court in *Abbasi* clarified that *Bivens* itself authorizes damages for Fourth Amendment violations *only* in the narrow "search-and-seizure context in which [that case] arose." *Abbasi*, 137 S. Ct. at 1856, 1860. *Bivens* simply did not involve anything like the Fourth Amendment claims Plaintiffs present here—a challenge to high-level decisions associated with the deployment of federal resources to and within a major city to protect federal property and personnel during weeks of civil unrest, and associated with law-enforcement tactics allegedly designed to respond to that unrest. If allowed to proceed, there are at least five key ways in which Plaintiffs' suit would surely "assume dimensions far greater than those present in *Bivens* itself." *Id.* at 1861.

First, "a 'new context' is present whenever the plaintiff seeks damages from a 'new category of defendants.'" *Loumiet*, 948 F.3d at 382 (quoting *Abbasi*, 137 S. Ct. at 1857 (internal citation omitted)). *Bivens* recognized a Fourth Amendment claim against line-level law enforcement officers. *Bivens*, 403 U.S. at 389-90. The defendants sued here—a former Acting CBP Commissioner, a former United States Marshal, and four high-ranking FPS and USMS officials—are high-level, supervisory officials. Claims against high-ranking, government officials within the executive branch are meaningfully different from those recognized against the "line-level" agents in *Bivens. See Abbasi*, 137 S. Ct. at 1860 (dismissing claims against high-level "Executive Officials"). Any claims against supervisory officials necessarily "arise in a new context because the Supreme Court has not extended a *Bivens* remedy against any federal official under a theory of respondeat superior." *Pereira Luna v. Thomas*, No. 2:19-CV-00431-JFW (AFM), 2020 WL 473133, at *7 (C.D. Cal. Jan. 28, 2020) (citations omitted); *see also Blackwell v. United States*, No. CV 15-08968 PA (AFM), 2019 WL 8953363, at *4 (C.D. Cal. Dec. 9, 2019) ("attempt to hold defendants liable in their supervisory roles as warden"

arose in a new *Bivens* context), *report and recommendation adopted,* 2019 WL 8060096 (C.D. Cal. Dec. 12, 2019), *appeal dismissed sub nom. Blackwell v. Jaspal*, No. 20-55198, 2020 WL 2730924 (9th Cir. Mar. 30, 2020).

As was the case with the *Bivens* claims the Court has already rejected, Plaintiffs do not allege that any of the Defendants "personally seized them with excessive force or detained them without probable cause in violation of the Fourth Amendment;" nor do Plaintiffs offer a "specific connection" between any of the Defendants "and the actions of any rank-and-file federal officers who directly caused Plaintiffs' alleged constitutional injuries." *See Clark*, 2021 WL 2386115, at *4. Thus, not only does the "rank" of the defendants here differ from the "rank" of the defendants in *Bivens*, the "specificity" of the alleged actions differs as well. *See Ioane v. Hodges*, 939 F.3d 945, 952 (9th Cir. 2018) (finding "no difference between [*Bivens* and plaintiff's case]" where plaintiff's Fourth Amendment claim against a federal agent was based on a warrantless search of her person by that federal agent). As the Ninth Circuit has observed, "[a] claim for damages based on individualized mistreatment by rank-and-file federal officers is exactly what *Bivens* was meant to address." *Reid v. United States*, 825 F. App'x 442, 444 (9th Cir. 2020) (citing *Lanuza v. Love*, 899 F.3d 1019, 1029-32 (9th Cir. 2018)). That is not the claim Plaintiffs assert here.

Second, the "legal mandate" the Defendants allegedly operated under in this case is meaningfully different from that at issue in *Bivens*. *Abbasi*, 137 S. Ct. at 1860. *Bivens* involved the enforcement of federal drug laws. By contrast, this case involves (1) the Executive Branch's authority to deploy DHS resources to protect federal property and personnel, 40 U.S.C. § 1315 (Law enforcement authority of Secretary of Homeland Security for protection of public property), *see* SAC ¶¶ 5, 7, 23-26, 29-31; (2) the enforcement of federal laws against the destruction of federal property, *e.g.*, 18 U.S.C. § 1361; and (3) an Executive Order setting Executive Branch policy and prioritizing the protection of federal property in the wake of ongoing civil unrest, *see* SAC ¶¶ 5, 43, 54-55 (citing Exec.

Order No. 13,933, 85 Fed. Reg. 40,081 (June 26, 2020)). High-level decisions regarding the deployment of federal officers to protect federal property and personnel in the midst of civil unrest, and alleged tactical decisions made in support of those decisions, present a different aspect of police work than the in-home apprehension, detention, and physical search at issue in *Bivens. See Farah v. Weyker*, 926 F.3d 492, 496 (8th Cir. 2019) (declining Fourth Amendment *Bivens* remedy against a federal law enforcement officer who allegedly "lie[d], manipulate[d] witnesses, and falsifie[d] evidence"); *cf. Loumiet*, 948 F.3d at 389 (enforcement of federal banking laws presented a new context from *Bivens*).

Third, "the extent of judicial guidance" regarding how the Executive Branch should have "respond[ed] to the problem or emergency" underlying Plaintiffs' claims also markedly differs from *Bivens. Abbasi*, 137 S. Ct. at 1860. The question in *Bivens* was whether a line-level officer could enter a person's home without a warrant, consent, or exigent circumstances—a question extensively addressed by courts at the time. Judicial guidance is less defined regarding the key question presented by Plaintiffs' claims: whether and how (consonant with the Fourth Amendment) the federal government can deploy federal officers to protect federal property and personnel, and—depending on the circumstances—forcibly disperse large crowds or make arrests in response to civil unrest. *Cf. Wood v. Moss*, 572 U.S. 744, 764 (2014) (granting qualified immunity to Secret Service agents who moved protesters at Presidential event). Unlike the clear Fourth Amendment prohibition on breaching a home absent a warrant or other cause, "[t]he decisions of the Supreme Court demonstrate the difficulty of balancing the vital right of protest against the legitimate governmental interests of public order and safety." *Quaker Action Grp. v. Hickel*, 421 F.2d 1111, 1116 (D.C. Cir. 1969) (collecting cases). That is particularly true where, as here, protest occurred on or near federal property. *See Adderley v. Florida*, 385 U.S. 39, 48 (1966) ("The United States Constitution does not forbid a State to control

the use of its own property for its own lawful nondiscriminatory purpose."); *United States v. Grace*, 461 U.S. 171, 182 (1983); *Koala v. Khosla*, 931 F.3d 887, 899-900 (9th Cir. 2019) (collecting cases).

The lack of clear judicial guidance in the context presented here flows into a fourth, related factor: "the risk of disruptive intrusion by the Judiciary into the functioning of other branches[.]" *Abbasi*, 137 S. Ct. at 1860. "The Government 'has power to preserve the property under its control for the use to which it is lawfully dedicated.'" *Rosebrock v. Beiter*, 788 F. Supp. 2d 1127, 1135 (C.D. Cal. 2011) (quoting *Adderley*, 385 U.S. at 47), *aff'd sub nom. Rosebrock v. Mathis*, 745 F.3d 963 (9th Cir. 2014); *cf. Wilkie v. Robbins*, 551 U.S. 537, 557 (2007) ("[T]he Government too may stand firm on its rights and use its power to protect public property interests."). That important governmental power intersects with the protection of individual rights: "Civil liberties, as guaranteed by the Constitution, imply the existence of an organized society maintaining public order without which liberty itself would be lost in the excesses of unrestrained abuses." *United States v. Griefen*, 200 F.3d 1256, 1263 (9th Cir. 2000) (quoting *Cox v. New Hampshire*, 312 U.S. 569, 574 (1941)). "Protecting government property" is "essential to public peace, order, and safety." *United States v. Allen*, 760 F.2d 447, 452 (2d Cir. 1985); *cf. Griefen*, 200 F.3d at 1263 (observing there would be "good reasons" to temporarily close "a street engulfed in a riot or an unlawful assembly"). But the government's ability to maintain public order by protecting federal property, such as the Hatfield Courthouse, would likely be compromised by new personal damages liability that "cause[s] an official [tasked with that responsibility] to second-guess difficult but necessary decisions . . . ." *Abbasi*, 137 S. Ct. at 1861. As detailed below, the "proper balance" between "deterring constitutional violations and freeing high[-level] officials to make the lawful decisions necessary to protect" federal property and personnel at a time of unrest "is one for the Congress, not the Judiciary, to undertake." *Id.* at 1863.

Finally, even if that balance were one for this Court to strike, the stated "purpose of *Bivens*" liability—*i.e.*, to deter wrongdoing by "the *officer*" who allegedly injured Plaintiffs—cannot be

achieved in a suit brought against the Executive Branch officials sued here. *Abbasi*, 137 S. Ct. at 1860 (internal quotations marks and citation omitted). "The implied causes of action recognized by *Bivens* and its limited progeny have generally been made against individuals . . . who have engaged in some personal misconduct in a direct and particularized interaction with a plaintiff, not against individuals who have applied a general policy that affected [a] plaintiff and others in similar ways." *Mejia-Mejia v. ICE*, No. CV 18-1445 (PLF), 2019 WL 4707150, at *4 (D.D.C. Sept. 26, 2019). No Plaintiff here al-leges a "direct and particularized interaction" with *any* of the Defendants. To the contrary, Plaintiffs' claims are based *entirely* upon alleged (albeit in a conclusory manner) direction and knowledge, on the part of each of the Defendants, of conduct by line-level federal personnel that affected Plaintiffs and others in similar ways. Plaintiffs' claims are indistinguishable from those the Court has already re-jected as "an attempt to hold senior Executive Branch officials individually liable for their high-level role in coordinating and overseeing 'Operation Diligent Valor'." *Clark,* 2021 WL 2386115, at *4. The "indirect mechanism of injury," *Farah*, 926 F.3d at 499, asserted by Plaintiffs here is entirely dif-ferent from *Bivens* itself, as well as the two other cases in which the Supreme Court has recognized a *Bivens* remedy. The claims addressed here, and in the Court's Order dismissing Plaintiffs' claims against Wolf and Cuccinelli, more closely resemble those in *Abbasi*, where the Supreme Court held that high-level detention policy claims against the Attorney General and FBI Director, including a Fourth Amendment strip-search claim, presented a new context for which there was no *Bivens* rem-edy. *Abbasi*, 137 S. Ct. at 1853-54, 1858. For this court to hold otherwise, as discussed next, would expand *Bivens* in an unprecedented manner and upend settled law that "a *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others." *Id.* at 1860.

       **C.**      **Special factors preclude a *Bivens* remedy in this case.**

Because Plaintiffs' claims presents a new context, the Court must determine whether any "special factors" bar an extension of *Bivens* here. The threshold for what constitutes a "special factor" counseling hesitation is "remarkably low." *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009). Hesitation is appropriate whenever "thoughtful discretion" would cause the Court to pause to even "consider" recognizing a new context. *Id.* And "[t]he range of concerns to be considered in answering th[e] [special factors] inquiry is broad." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 280 (1997) Here, as in *Clark*, the special factors analysis dictates that this Court should decline Plaintiffs' invitation to create a new implied damages remedy. *Abbasi*, 137 S. Ct. at 1858.

1.    ***Bivens*** **should not be extended to challenges to high-level policy decisions.**

The genesis of Plaintiffs' *Bivens* claims is the deployment of federal agents to Portland for the purpose of implementing Executive Order 13933, which was issued by former President Trump on June 26, 2020. SAC ¶ 5; *see also id.* ¶ 42 (alleging "John Doe Supervisory and Patrol-Level Defendants" to be "federal agents with oversight or administrative authority over, dispatched to, or stationed in Portland, Oregon . . . in furtherance of [ ] Executive Order 13933"). Executive Order 13933 stated an Executive Branch "policy" to "prosecute to the fullest extent permitted under Federal law" any person who "vandalizes government property," and any person who "participates in efforts to incite violence or other illegal activity in connection with [ ] riots and acts of vandalism." 85 Fed. Reg. 40,081. The Order noted that Congress has enacted numerous federal statutes criminalizing the destruction or desecration of federal property. 85 Fed. Reg. 40,081 at § 2 (citing 18 U.S.C. § 1361; 18 U.S.C. § 1369; 54 U.S.C. § 100722). The Order also noted that the stated policy was rooted in laws prohibiting looting, vandalism, rioting, and other violence. *Id.* (citing 18 U.S.C. § 2101; 18 U.S.C. § 371; 18 U.S.C. § 2; 18 U.S.C. § 2339A); *see also* 40 U.S.C. § 1315.

While Plaintiffs' claimed injuries allegedly occurred at the hands of lower-level line agents on the ground in Portland, the Second Amended Complaint is largely built upon political comments by

former President Trump and former Acting DHS Secretary Chad Wolf,[2] as well as alleged high-level policy decisions related to the deployment of federal resources to and within Portland in support of the federal policies outlined in Executive Order 13933.[3] In the words of then-Acting DHS Secretary Wolf, as described by Plaintiffs, the government's policy was clear: "to maintain" a presence of "augmented federal law enforcement personnel in Portland until [authorities] are assured that the Hatfield Federal Courthouse and other federal properties will no longer be attacked and that the seat of justice in Portland will remain secure." SAC ¶ 92 (internal quotations marks and citations omitted). Plaintiffs' core grievance against the high-level Defendants at issue here is equally clear: federal officers should never have been sent to Portland; nor should they have been authorized or allowed by policy to use certain alleged law-enforcement techniques in support of their federal mission. *See id.* ¶¶ 5-10, 48(c), (k)-(m), 93-97, 133. To the extent that Plaintiffs argue that they challenge individual decisions rather than policies, that argument is answered by *Abbasi*, which recognized that even when a claim is "confined to the conduct of a particular Executive Officer in a discrete instance," the claim still may call into question the implementation of general policy. 137 S. Ct. at 1860. In fact, Plaintiffs' claims are *not* confined to a discrete instance; Plaintiffs allege that the conduct at issue was continuous throughout the entire month of July 2020. SAC ¶¶ 5, 8, 13, 19-20, 47, 60.

This Court has recognized, in accordance with Supreme Court precedent, that "*Bivens* suits are not appropriate mechanisms to litigate objections to government policies with widespread applicability." *Clark,* 2021 WL 2386115, at *5; *see Abbasi*, 137 S. Ct. at 1860 ("it must be noted that a *Bivens* action is not 'a proper vehicle for altering an entity's policy'") (quoting *Malesko*, 534 U.S. at 74); *Lanuza*, 899 F.3d at 1028 ("*Abbasi*'s special factors include: . . . whether *Bivens* is being used as a vehicle to alter an entity's policy"); *accord Zavala v. Rios*, 721 F. App'x 720, 721 (9th Cir. 2018). *Cf.*

---

[2] *See, e.g.*, SAC ¶¶ 54-56, 58, 80-82, 91-92.

[3] *See, e.g.*, SAC ¶¶ 134-35.

Findings & Recommendation, *Finicum v. United States*, No. 2:18-cv-00160-SU (D. Or. July 24, 2020),

ECF No. 161 at 35 (declining to extend *Bivens* remedy where plaintiffs' claims "implicate[d] ques-

tions of executive policy, particularly those claims concerning the planning of law enforcement oper-

ations . . . ."). That prohibition dovetails with the longstanding notion that *Bivens* liability is only

meant to deter the individual officer based on *his or her own conduct. Abbasi*, 137 S. Ct. at 1860. For ex-

ample, in dismissing policy-based claims against a former Attorney General and a former Director of

the Office of Refugee Resettlement, the district court in *Mejia-Mejia*, observed that *Bivens* claims

"have generally been made against individuals—a police officer, a supervisor, or a federal prison

guard—who have engaged in some personal misconduct in a direct and particularized interaction

with a plaintiff." 2019 WL 4707150, at *4. *Bivens* claims are "not" usually available "against individu-

als who have applied a general policy that affected plaintiff and others in similar ways." *Id.; see Clark,*

2021 WL 2386115, at *5. Indeed, "[t]here are serious separation of powers problems with using indi-

vidual capacity constitutional claims for money damages to lodge facial challenges to generally appli-

cable laws and policies," *Mejia-Mejia*, 2019 WL 4707150, at *4 (citing *Abbasi*, 137 S. Ct. at 1860), as

Plaintiffs do here by challenging high-level policy decisions associated with the deployment of fed-

eral resources to—and the use of those resources within—Portland for the purpose of protecting

federal property and personnel. *See Clark*, 2021 WL 2386115, at *4.

   As the Court has already recognized, "extending *Bivens* remedies to claims against individuals

who lack a direct and particularized connection to Plaintiffs' harms would undermine the purpose of

*Bivens* liability—"to deter individual federal officers from committing constitutional violations."

*Clark*, 2021 WL 2386115, at *5 (quoting *Malesko*, 534 U.S. at 70); *see also Schwarz v. Meinberg*, 761 F.

App'x 732, 735 (9th Cir. 2019) (dismissing *Bivens* claims against high-ranking prison officials); *cf.*

*Zavala*, 721 F. App'x at 721-22 (rejecting *Bivens* claim for "constitutional harm caused by a prison-

wide policy"). While Plaintiffs are free to disagree with matters of federal policy, deciding whether

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF - 15

and how to address ongoing unrest on or near federal property in Portland necessarily required deliberation and the exercise of judgment at the highest levels of government. Plaintiffs' request for a marked "extension of *Bivens*," in which the Court re-weighs the equities faced by the Defendants—high-ranking members of a separate branch—in addressing ongoing civil unrest, and does so in the context of a personal-capacity damages suit that Congress has never authorized, should be rejected. *See Abbasi*, 137 S. Ct. at 1857-58; *Clark*, 2021 WL 2386115, at *5.[4]

### 2. Significant practical concerns counsel against a *Bivens* remedy.

*Abbasi* advises that courts should hesitate before implying a new *Bivens* remedy when adjudication of a case is rife with practical concerns. *See Abbasi*, 137 S. Ct. at 1856. Indeed, even before *Abbasi*, courts refrained from permitting a *Bivens* remedy when a case presented concerns related to the ability to administer the remedy. *See Meshal v. Higgenbotham*, 804 F.3d 417, 427 (D.C. Cir. 2015) (detailing practical factors counseling hesitation); *Lebron v. Rumsfeld*, 670 F.3d 540, 553 (4th Cir. 2012) (cataloging problems related to the ability to administrate the new *Bivens* remedy requested). Plaintiffs' *Bivens* claims raise at least three separate but interrelated practical concerns: (a) the risk of intrusion into sensitive Executive Branch communications; (b) the delicate balancing of interests when it comes to the protection of federal property and personnel; and (c) the workability issues pervasive in claims that could be/are lodged by a class of plaintiffs and inherent in claims based on motive.

a. One reason this Court should not imply a remedy here is that adjudication of Plaintiffs' *Bivens* claims would invite, if not require, discovery into the decision-making processes associated with the deployment of federal resources to and within Portland. This includes deliberations involv-

---

[4] That Congress has immunized discretionary policy judgments of the sort allegedly made by the Defendants from tort liability under the FTCA, *see* 28 U.S.C. § 2680(a), is further proof that courts should not create liability under *Bivens* for such discretionary actions. *See Abbasi*, 137 S. Ct. at 1858.

ing the former President and former Acting DHS Secretary, whose public commentaries are referenced throughout the Second Amended Complaint, as well as other high-ranking federal officials.[5] Claims which "call into question the formulation and implementation of a general policy . . . in turn, would necessarily require inquiry and discovery into the whole course of the discussions and deliberations that led to the policies and governmental acts being challenged." *Abbasi*, 137 S. Ct. at 1860. The Supreme Court has cautioned against allowing plaintiffs to use a judicially-implied cause of action as a means to probe the motives, discussions, and deliberations of Executive Branch officials. *Id.* at 1860-61. The source of this hesitation is two-fold: the recognition that disclosure of such deliberations could "interfere in an intrusive way with sensitive functions of the Executive Branch," coupled with the disruptive nature and costs of the discovery and trial processes, all of which would occur within the context of a damages remedy Congress never approved. *See id.* at 1861.

This Court has already found these two concerns persuasive. *See Clark*, 2021 WL 2386115, at *5. Both concerns are also implicated here. First, Plaintiffs sue the Defendants for high-level planning and decision-making. The core argument that recurs throughout the complaint is that federal agents, who were deployed to Portland to implement an Executive Order issued by former President Trump for the "ostensible purpose" of "protect[ing] federal property and personnel," instead acted with the "apparent purpose of quelling lawful protests in support of Black lives." SAC ¶¶ 7, 57. Probing the "ostensible" and "apparent" purposes for the deployment of federal officers to Portland and the actions of those officers while there "necessarily require[s] inquiry and discovery into the whole course of the discussions and deliberations that led to the policies and governmental acts being challenged." *Abbasi*, 137 S. Ct. at 1860. In turn, the disclosure of confidential communications

---

[5] *See, e.g.*, SAC ¶¶ 54-56, 58, 80-82, 91-92. Among the questions of law or fact Plaintiffs allege to be common to the purported class are the admissibility of statements made by former President Trump and certain federal officials. *See id.* ¶¶ 48(s)-(t).

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF - 17

between the former President, former Acting DHS Secretary, and other high-level Executive Branch officials—particularly communications regarding the security of federal property in Portland (and elsewhere)—could "interfere in an intrusive way with sensitive functions of the Executive Branch." *Id.*; *Lebron*, 670 F.3d at 551 (refusing to imply a *Bivens* remedy, observing, "[i]t takes little enough imagination to understand that a judicially devised damages action would expose past executive deliberations affecting sensitive matters of national security to the prospect of searching judicial scrutiny."); *K.O. v. ICE*, 468 F. Supp. 3d 350, 365 (D.D.C. 2020) (stating claims that reach into Executive Branch deliberations and conversations close to the President gave the court "more reason to pause before allowing a *Bivens* action that could reach them"), *appeal filed*, No. 20-5255 (D.C. Cir. Aug. 26, 2020). The Supreme Court has found such an intrusion to high-ranking Executive Branch decision-makers to be a factor weighing against implying a *Bivens* remedy. *Abbasi*, 137 S. Ct. at 1861. This Court made a similar finding in support of the dismissal of the *Bivens* claims asserted against Defendants Wolf and Cuccinelli. *Clark*, 2021 WL 2386115, at *5.

Given the "high rank[ ]" of the Defendants sued here, it is hard to "see how prosecution of [Plaintiffs'] claims could avoid looking into" deliberations and decisions made "at the highest levels" of the government. *K.O.*, 468 F. Supp. 3d at 366. Because the alleged bad motivation behind the "apparent purpose" of the federal deployment to Portland "is easy to allege and hard to disprove," the Court may be required to scrutinize high-level communications with the President or to probe intelligence regarding threats to federal property in Portland. *Crawford-El v. Britton*, 523 U.S. 574, 584-85 (1998) (internal quotations marks and citation omitted). The potential availability of a qualified immunity defense does not allay the "difficulties" of subjecting high-level communications and sensitive material to "judicial and public scrutiny" in the context of a damages suit Congress never approved. *Wilson v. Libby*, 535 F.3d 697, 710 (D.C. Cir. 2008); *cf. United States v. Stanley*, 483 U.S. 669, 682-83 (1987) (potential for intrusive discovery into military decision-making counseled against

*Bivens* remedy); *Moss*, 572 U.S. at 762 (examining sensitive security manual before granting immunity). Allowing the sensitive issues intertwined with Plaintiffs' claims to be probed through a novel extension of *Bivens* "would substantially affect government operations" and also "unduly burden" the high-level officials "who must defend against this suit in their personal capacities." *Schwarz*, 761 F. App'x at 735; *Abbasi*, 137 S. Ct. at 1858 ("[T]he decision to recognize a [*Bivens*] damages remedy requires an assessment of its impact on governmental operations systemwide.").

Whether Plaintiffs' policy-based claims are allowed to proceed by class action or in an indeterminate number of separate cases,[6] the Executive Branch officials they sue—as well as the government itself—would be saddled with extraordinarily burdensome and time-consuming discovery, creating an unacceptable disincentive to public servants considering high-level office. *See Abbasi*, 137 S. Ct. at 1857 (constitutional tort suits create "substantial costs" against both the individual federal officer and the government). "[T]he burden and demand of litigation might well prevent [the Defendants]—or, to be more precise, future officials like them—from devoting the time and effort required for the proper discharge of their duties." *Id.* at 1860 (citing *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 382 (2004)); *Clark*, 2021 WL 2386115, at *5. That in turn could chill Executive Branch officials from fulfilling their duty and responsibility to protect federal property and personnel, especially where there is ongoing unrest or disruption. Imposing *Bivens* liability for the exercise of that authority and discretion would intrude on the "need for unhesitating and decisive action," thus hampering the government's ability to protect federal buildings and personnel. *Chappell v. Wallace*, 462

---

[6] To date, at least six suits have been filed by individual plaintiffs asserting injuries suffered during the Portland protests, and alleging similar Fourth Amendment *Bivens* claims against the Defendants. *See Cohen v. Russell*, No. 3:21-cv-579-IM (D. Or.); *Haberman-Ducey v. Russell*, No. 3:21-cv-890-SB (D. Or.); *Jessie-Uyanik v. Russell*, No. 3:21-cv-931-YY (D. Or.); *Mead v. Russell*, No. 3:21-cv-672-MO (D. Or.); *Kristiansen v. Russell*, 3:21-cv-546-IM (D. Or.), *Ketcher v. Russell*, 3:21-cv-00983 (D. Or.).

U.S. 296, 304 (1983); *Vanderklok v. United States*, 868 F.3d 189, 207 (3d Cir. 2017) (declining to extend *Bivens* because "[t]he threat of damages liability" might cause a TSA agent to "hesitate in making split-second decisions about suspicious passengers").

Citing similar concerns, the Court dismissed these same *Bivens* claims as asserted against two other high-ranking federal officials in this case. As the Court observed in *Clark*, "if the courts were to entertain such challenges, the discovery and litigation process would inevitably 'border upon or directly implicate the discussion and deliberations that led to the formation of the policy in question,' thus intruding on the 'sensitive functions of the Executive Branch.'" *Clark*, 2021 WL 2386115, at *5 (quoting *Abbasi*, 137 S. Ct. at 1860-61). Other district courts have offered these same concerns as a basis for dismissing similar *Bivens* claims. *See Mejia-Mejia*, 2019 WL 4707150; *K.O.*, 468 F. Supp. 3d 350. In *Mejia-Mejia*, the district court warned of a chilling effect "[i]f the courts were to entertain challenges to Executive Branch policies that are pursued through personal lawsuits against the officials of departments and agencies of government." 2019 WL 4707150, at *5. In particular, "the discovery required to gain details on individual defendants' motivations could dampen the candor of conversations and advice rendered by officials within the executive branch." *Id.*; *see Clark*, 2021 WL 2386115, at *5. These concerns are even more pronounced in *this* case given that Plaintiffs' claims "reach even further into Executive Branch deliberations;" and the "conversations and advice at issue" are not only "closer to the office of the President," *K.O.*, 468 F. Supp. 3d at 365, but allegedly involve a former President. *See* SAC ¶¶ 5, 48(s)-(t), 54-56, 58, 80-82, 91-92. Whether or not these conversations are deemed privileged or otherwise protected from discovery, they provide "more reason to pause before allowing a *Bivens* action that could reach them." *K.O.*, 468 F. Supp. 3d at 365; *cf. Lillemoe v. U.S. Dep't of Agric., Foreign Agric. Serv.*, 344 F. Supp. 3d 215, 232-33 (D.D.C. 2018) (*Bivens* should not be extended to challenge "high-level policy determinations").

It is true that no one knows exactly what discovery will entail because, until this case, no similar *Bivens* claim has been previously *alleged*, let alone survived a motion to dismiss. *Meshal*, 804 F.3d at 426. But when weighty concerns like the safety of federal property and personnel are at stake, "the unknown itself" is enough to counsel hesitation. *Id.* As the Court found in *Clark*, *see* 2021 WL 2386115, at *5, a new damages remedy should not be recognized here because "the costs and difficulties" of such litigation "might intrude upon and interfere with the proper exercise" of the Executive Branch in this vital context. *Abbasi*, 137 S. Ct. at 1863.

**b**. Concerns related to the ability to administrate a new *Bivens* remedy are particularly pronounced here, where an implied remedy would implicate the sensitive balance between First Amendment rights and the critical interest in protecting federal property and personnel.

The Supreme Court has recognized that those who seek to "propagandize protests or views" do not have a constitutional right to do so "whenever and however and wherever they please." *Adderley*, 385 U.S. at 48; *Cox v. Louisiana*, 379 U.S. 536, 554-55 (1965) (collecting cases). "Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *See Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799-800 (1985). The government has ample authority to regulate activity related to federal buildings that "in any way obstruct[s] the sidewalks or access to the building, threaten[s] injury to any person or property, or in any way interfere[s] with the orderly administration of the building or other parts of the grounds." *Grace*, 461 U.S. at 182.

Federal agents were deployed to and within Portland, and utilized various tactics during that deployment, in accordance with a policy decision to protect federal property and personnel in response to civil unrest. Resolution of Plaintiffs' *Bivens* claims would require the Court to wrestle with

such issues as the requisite level of protection for the federal property and personnel in question, acceptable justifications for that level of protection, and the acceptable means of achieving it. The Court would be re-weighing the equities faced by the Defendants, high-ranking members of a coordinate branch, to make an after-the-fact determination of the way in which the Fourth Amendment's open-ended reasonableness standard applied to supervisory decisions and exercises of discretion in this unusual context.[7] And this undertaking would proceed in the context of a cause of action that Congress has not provided—an implied cause of action for damages against high-level government officials in their personal capacities.

While imposing personal liability can promote certain interests, it may also result in substantial costs not just for the individual defendant, but for citizens "who depend on the vigorous enforcement of federal law." *Loumiet*, 948 F.3d at 381. "[J]udges are not well-suited" to decide "how to balance these competing considerations in various contexts." *Id.* This fundamental concern about implied causes of action is only magnified when the security of federal property and personnel are at stake. That is why the Supreme Court instructs that when a case involves "a host of considerations that must be weighed and appraised, [devising a remedy] should be committed to those who write the laws, rather than those who interpret them." *Abbasi*, 137 S. Ct. at 1857 (quotation marks and citation omitted).

**c**. The nature of Plaintiffs' claims against the high-level government officials named as defendants in this case exacerbates the concerns noted above. Plaintiffs seek to convert their claims against the Defendants into a class action on behalf of an untold number of protesters. *See* SAC ¶ 47

---

[7] *Cf. Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 299 (1984) (finding that time, place, and manner decisions do not "assign to the judiciary the authority to replace the Park Service as the manager of the Nation's parks or endow the judiciary with the competence to judge how much protection of park lands is wise and how that level of conservation is to be attained").

(alleging putative class is so numerous that joinder is impracticable). Moreover, Plaintiffs do not assert any claim stemming from a direct and particularized interaction between any Plaintiff and any of the Defendants. Rather, Plaintiffs challenge alleged decisions by the Defendants as applied to *every person* who was in a "protest zone" between July 1 and July 30, 2020, and exposed to tear gas. *Id.* A claim against government leaders for their judgments as applied towards a large group of people is a mismatch for *Bivens* and raises workability concerns similar to a claim that challenges a policy. Allowing a *Bivens* claim that is wholly divorced from a personal interaction between a specific plaintiff and specific defendant would have sweeping implications not only for an individual defendant, but for governmental operations system wide. *Abbasi*, 137 S. Ct. at 1858. Indeed, permitting such a claim "risks a torrent of new litigation that could burden both the Executive Branch and the judiciary." *Mejia-Mejia*, 2019 WL 4707150, at *5. These concerns are further underscored with respect to *Bivens* claims—such as those here—that involve inquiry into a defendant's motive. Courts have recognized that such claims are especially difficult to administer through a *Bivens* remedy. *Loumiet*, 948 F.3d at 385 (refusing to expand *Bivens* to First Amendment retaliation claims in part because such motive-based claims are easy to allege); *Bistrian v. Levi*, 912 F.3d 79, 96 (3d Cir. 2018) (same).

### 3.   The availability of alternative avenues for relief precludes a new *Bivens* remedy.

Another "'convincing reason'" why this Court should not step into the shoes of Congress or the Executive Branch by creating a new *Bivens* remedy is that Plaintiffs here have "'alternative, existing process[es]'" to vindicate their interests. *Abbasi*, 137 S. Ct. at 1858 (quoting *Wilkie*, 551 U.S. at 550) (collecting cases). Plaintiffs can seek injunctive and/or declaratory relief to protect their constitutional interests through an action against the federal government. Both the Supreme Court and Ninth Circuit have observed that the opportunity to seek some form of equitable relief is precisely the kind of alternative process that "usually precludes" extending *Bivens* into a new context. *Abbasi*,

137 S. Ct. at 1865 (observing that detainees' ability to enjoin unconstitutional conditions of confine-ment counsels against *Bivens* relief); *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018) (observ-ing that "'[a]lternative remedial structures'" precluding a *Bivens* remedy "can take many forms," in-cluding "equitable" relief); *see Clark*, 2021 WL 2386115, at n.4. Unlike a *Bivens* remedy, a request for *official capacity* equitable relief has long been recognized as the proper means for preventing entities from acting unconstitutionally. *See Malesko*, 534 U.S. at 74. The Ninth Circuit has specifically held that the ability to pursue equitable relief under the Administrative Procedure Act "leaves no room for *Bivens*." *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1123 (9th Cir. 2009); *see also Occupy Eugene v. U.S. Gen. Servs. Admin.*, No. 6:12-CV-02286-MC, 2013 WL 6331013, at *5-7 (D. Or. Dec. 3, 2013) (availability of APA relief precluded protesters' *Bivens* claim).

Moreover, Plaintiffs may have other alternative mechanisms for seeking recourse. Depend-ing on the facts, for certain claims Plaintiffs could pursue a claim against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), *id.* §§ 2671-80, or against state or local actors under state tort law or federal civil rights statutes like § 1983. While the Supreme Court in *Carlson* ruled that the FTCA is not a special factor precluding *Bivens*, *see Carlson*, 446 U.S. at 23, on at least *four* occa-sions since *Carlson*, the Court has held or observed that the availability of "state tort law" may "pro-vide[ ] alternative means for relief" precluding a new *Bivens* remedy. *Abbasi*, 137 S. Ct. at 1858; *see Minneci v. Pollard*, 565 U.S. 118, 120 (2012); *Wilkie*, 551 U.S. at 551; *Malesko*, 534 U.S. at 72-73. The Ninth Circuit has held the same. *See Vega*, 881 F.3d at 1154-55 & n.3 (state law and FTCA remedies precluded *Bivens*); *Schwarz*, 761 F. App'x at 734-35 (the FTCA with other remedies precluded *Bivens*).[8] *See also Oliva v. Nivar*, 973 F.3d 438, 443-44 (5th Cir. 2020) (*Bivens* remedy precluded in a new Fourth Amendment context where the FTCA provided an "alternative remedial scheme" for the plaintiff's

---

[8] The Ninth Circuit recently cited *Carlson* in determining that the FTCA *alone* did not qualify as an alternative process. *Boule v. Egbert*, 998 F.3d 370, 391-92 (9th Cir. 2021).

excessive force claim and Congress made no statutory provision for the defendant officer's personal liability), *reh'g denied*, No. 20-1060, 2021 WL 3275775 (U.S. Aug. 2, 2021); *Oliveras v. Basile*, 440 F. Supp. 3d 365, 373 (S.D.N.Y. 2020); *Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019). The possible availability of damages under the FTCA (or against state actors under state tort law or § 1983)—when paired with all of the special factors above—provides ample reason for this Court to decline Plaintiffs' invitation to create a new implied cause of action. *See Abbasi*, 137 S. Ct. at 1861; *Wilkie*, 551 U.S. at 560 (noting that where "torts by Government employees would be so clearly actionable under the general law . . . it would furnish only the weakest argument for recognizing a generally available constitutional tort").[9]

Finally, apart from these available remedies, there are several other ways for Plaintiffs to vindicate their interests and to deter the type of misconduct alleged in the complaint—which occurred during the exercise of federal law-enforcement authority. Congress has authorized Inspectors General throughout the Executive Branch to investigate and report abuses by federal law-enforcement officers, including DHS officials. *See* The Inspector General Act of 1978, 5 U.S.C. App. 3 § 3. The DHS Inspector General is specifically required to investigate alleged abuses of civil rights and civil liberties and must report to Congress twice a year. *See id.* at § 8I. Through its Office of Civil Rights and Civil Liberties, DHS is also required to investigate and report constitutional abuses to Congress. 6 U.S.C. §§ 611(b)(1)(G), 613(d)(3), 345. By exposing misconduct, these processes allow DHS to render "swift and certain" discipline where appropriate. *Vanderklok*, 868 F.3d at 209 (declining to extend *Bivens* in the context of airport security screening); *cf. Vega*, 881 F.3d at 1154 (BOP administrative remedies precluded *Bivens* relief). They may also expose criminal violations of constitutional

---

[9] *See Alberto-Toledeo v. Washington Cnty.*, No. 3:20-CV-01557-MC, 2021 WL 3007256, at *7 & n.5 (D. Or. July 15, 2021) (availability of Section 1983 remedy against county defendants combined with limited involvement of federal defendants "weigh[ed] heavily" against recognizing *Bivens* remedy in new context).

rights, *see* 28 U.S.C. §§ 241-42, another deterrent of official abuse. And they may prompt Congress to investigate and craft appropriate new remedies in response to alleged abuses. *Cf. Abbasi*, 137 S. Ct. at 1862 (Congress's failure to provide remedies for alleged abuses documented in OIG report counseled hesitation).[10]

*              *              *

The Court has rejected Plaintiffs' request for an extension of *Bivens* to identical Fourth Amendment claims asserted against other high-level federal officials in this exact context. *Clark*, 2021 WL 2386115, at *5. Plaintiffs also fail to meet the demanding standard for an expansion of *Bivens* here. Congress has been entrusted with the "substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government." *Abbasi*, 137 S. Ct. at 1856. Plaintiffs' *Bivens* action "would assume dimensions far greater than those present in *Bivens* itself, or in either of its two follow-on cases, or indeed in any putative *Bivens* case yet to come before the [Supreme] Court." *Id.* at 1861. As the Court found in *Clark*, "Congress is the more appropriate body to weigh the costs and benefits of allowing for, and setting the limits of, the remedy Plaintiffs seek." 2021 WL 2386115, at *5.

## II.    THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

This court need not examine Plaintiffs' constitutional claims any further because, as shown above, governing precedent and the many special factors implicated by Plaintiffs' claims compel dismissal. *See Camreta v. Greene*, 563 U.S. 692, 705 (2011); *Hernandez*, 137 S. Ct. at 2007. But even if the Court does not find that special factors preclude creation of a *Bivens* remedy in this new context,

---

[10] Both Congress and OIG are currently investigating the government's response to the unrest in Portland and elsewhere.

each of the Defendants is entitled to qualified immunity.

### A.  The Framework Of The Qualified Immunity Defense

Qualified immunity protects government officials from personal liability for civil damages in the absence of facts pleaded by a plaintiff showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). This protection "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Qualified immunity is not merely a defense to liability. Government officials are accorded qualified immunity "to shield them from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982).

After a defendant asserts entitlement to qualified immunity, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. To overcome the first prong of the qualified immunity defense, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Respondeat superior is inapplicable to *Bivens* cases. *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991). Officers may only be subject to suit for constitutional violations if they are "directly responsible" for them. *Malesko*, 534 U.S. at 70-71. Therefore, in order for Plaintiffs to establish a *Bivens* claim against the Defendants, Plaintiffs must establish *each* defendant's "integral participation" in the alleged unconstitutional conduct, *Chuman v. Wright*, 76 F.3d 292, 294-95 (9th Cir. 1996), *Priest v. Holbrook*, 848 F. App'x 259, 261 (9th Cir. 2021), and Plaintiffs must set forth the specific factual basis upon which they claim each defendant is liable, *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980).

To overcome the second prong of the qualified immunity defense, Plaintiffs must show that

the right allegedly violated by a particular defendant was clearly established at the time of the con-
duct. *Moss*, 572 U.S. at 757. Clearly established rights are not defined as a "broad general proposi-
tion," *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam), but in a "particularized" sense so
that the "contours" of the right are clear to a reasonable official," *Anderson v. Creighton*, 483 U.S. 635,
640 (1987); *al-Kidd*, 563 U.S. at 741. "The legal principle" at issue must "clearly prohibit the officer's
conduct in the particular circumstances before him." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590
(2018); *see also Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (recognizing "specificity is especially im-
portant in the Fourth Amendment context" as it can be "difficult for an officer to determine how
the relevant legal doctrine . . . will apply to the factual situation the officer confronts."). Qualified
immunity applies unless existing precedent shows that the unlawfulness of a defendant's conduct is
"beyond debate." *al-Kidd*, 563 U.S. at 741.

## B. Plaintiffs Fail To Sufficiently Allege The Personal Participation Of Any Of The Defendants In A Violation Of Any Clearly Established Constitutional Right.

When high-ranking government officials are sued for purported violations of constitutional
rights, it is critical that there be sufficient allegations of their personal involvement in the alleged vio-
lations. High-level government positions require the supervision of large numbers of subordinates,
often nationwide and across multiple layers of a department or agency, and thus rarely entail in-
volvement in the particular actions of line-level employees. Accordingly, officials who hold such po-
sitions should not be lightly diverted from their responsibilities to answer conclusory claims. *See Iq-*
*bal*, 556 U.S. at 676-78. Plaintiffs' cannot overcome the Defendants' entitlement to qualified immun-
ity because they fail to establish either the direct or supervisory liability of any of the Defendants for
any violation of a clearly established constitutional right.

Plaintiffs offer *no* specific allegations with respect to Defendants Burger or Cline other than
the titles and responsibilities of their former government positions, SAC ¶¶ 27, 30, and the allegation

that Defendant Cline stood next to Defendant Wolf at a press conference, *id.* ¶ 82.

Plaintiffs offer no factual support for the conclusory allegation that Defendants Russell, Smith, and Jones "manned the 'Incident Command Post' or 'Emergency Operations Center' within the Hatfield Courthouse and observed live feed video of federal agents' use of excessive force and unlawful detention against peaceful protesters, photojournalists, members of the press, and legal observers." *Id.* ¶ 72. The declaration Plaintiffs previously cited as support for this allegation, *see* ECF No. 27 at ¶ 60 & n.15, instead, contradicts the allegation. In that declaration, which was submitted in the *Index Newspapers* case, Defendant Russell describes a host of violent behavior by protesters near the Hatfield Courthouse during the month of July 2020, the time period at issue in the Amended Complaint. This violent behavior included "a brazen attack to break into and set fire to the Hatfield Courthouse in the early morning hours of July 3, 2020," and protesters responding to an order not to trespass on federal property by "throwing items that posed a risk of officer injury, including rocks, glass bottles, and mortar-style fireworks, and pointing lasers at law enforcement personnel. *See* ECF 101-5 at ¶¶ 5-6, *Index Newspapers v. City of Portland*, 3:20-cv-1035-SI." The only behaviors noted as "personally observed" by Russell were numerous incidents where individuals masqueraded as members of the press while engaging in or encouraging violent behavior. *See id.* at ¶ 8. The declaration makes no mention of Defendants Jones or Smith. Plaintiffs assert no factual basis to support the allegation that Defendants Russell, Jones, Smith, and Morgan knew of federal agents leaving federal property to engage in crowd control without lawful authority to do so. SAC ¶ 73. Neither the behavior described nor knowledge of that behavior pleads a constitutional violation. Similarly, Defendant Morgan's alleged statement that federal officers would not be leaving Portland until "the violent criminal activity" was over, *id.* ¶ 92, and his presence next to Defendant Wolf at a press conference, *id.* ¶ 82, are not evidence of any constitutional violations.

Apart from these few and insufficient allegations of personal conduct directly attributable to

some of the Defendants, Plaintiffs' First and Second Claims for Relief rest on repeated assertions of wrongful conduct by undifferentiated and collective "federal agents" or "Defendants" *See, e.g.*, SAC ¶¶ 76, 105-12, 115-22, 126-28. However, it is well established that in a *Bivens* action, "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677; *Clark*, 2021 WL 2386115, at n.3. Plaintiffs do not allege that any of the Defendants personally seized them (or any putative class member) with excessive force or detained them (or any putative class member) without probable cause in violation of the Fourth Amendment. Thus, Plaintiffs' conclusory allegations of collective liability for excessive force and unlawful detention do not demonstrate the "integral participation" of any of the Defendants in any such violations. *Chuman*, 76 F.3d at 294. Plaintiffs cannot circumvent the personal participation requirement through a class-action *Bivens* lawsuit which seeks to hold high-level officials liable for alleged injuries potentially claimed by untold numbers of protesters with whom the officials they sue had no direct interaction.

Plaintiffs' Third Claim for Relief seeks to impose supervisory liability on each of the Defendants for alleged use of excessive force. SAC ¶¶ 130-37. Rather than attributing specific conduct to any of the Defendants, Plaintiffs seek to hold each of the Defendants liable for the actions of a collective of "Supervisory Defendants." *Id.* The Court previously declined to "summarily attribute" these same allegations to Defendants Wolf and Cuccinelli. *Clark*, 2021 WL 2386115, at n.3. The same determination is warranted here. To support their excessive force claim, Plaintiffs must show (1) that a federal officer used excessive force against them, *Jackson v. City of Bremerton*, 268 F.3d 646, 653-54 (9th Cir. 2001), and (2) the requisite causal connection between that officer, on the one hand, and a specific Defendant, on the other. *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Even assuming that Plaintiffs could satisfy both requirements without ever identifying the federal officer(s) who directly caused their injuries, Plaintiffs have not done so here.

Whether a claim for excessive force can proceed depends on the specific facts at issue. Merely giving an order to disperse a crowd that contains some peaceful protestors, for example, does not necessarily violate any clearly established constitutional right. The government's interest in public order and law enforcement can sometimes—in appropriate circumstances—permit law enforcement officers to "seize" in the Fourth Amendment sense a large cohesive crowd based on probable cause to believe that some, though not all, of its members engaged in criminal behavior, for example when acting as a unit. *See Bernini v. City of St. Paul*, 665 F.3d 997, 1003-04 (8th Cir. 2012) ("a reasonable officer in St. Paul could have believed that the Fourth Amendment did not require a probable cause determination with respect to each individual in a large and potentially riotous group before making arrests"); *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1195 (9th Cir. 2015) ("If a group or crowd of people is behaving as a unit and it is not possible (as it was in *Ybarra*) for the police to tell who is armed and dangerous or engaging in criminal acts and who is not, the police can have reasonable suspicion as to the members of the group."). And here, as the Ninth Circuit noted in *Index Newspapers*, it was "undisputed" that law enforcement agents from DHS and USMS were deployed to Portland "[i]n response to the threat to federal property," and that some of the protests had become violent and that there had been "incidents of vandalism, destruction of property, looting, arson, and assault." 977 F.3d at 821-22.

To be sure, the reasonableness of any particular order by a government official depends on the circumstances—just as the reasonableness of a line level officer's use of force to seize an individual depends on a "careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). But the question is whether the Plaintiffs have pleaded specific facts showing that the named Defendants through their *own* actions violated a right that was "clearly established" at the time of the challenged conduct

in the contexts presented. *al-Kidd*, 563 U.S. at 735. And here, they have not.

 *Felarca v. Birgeneau*, 891 F.3d 809 (9th Cir. 2018), illustrates the point. The plaintiffs in *Felarca* sued university administrators for injuries allegedly caused when campus police responded to a protest. *Id.* The plaintiffs alleged that the administrators planned the police response and failed to stop assaults by the police. *Id.* at 819. The Ninth Circuit first rejected supervisory liability for those administrators who were not in the police chain of command, finding that "[t]hey cannot be supervisors of persons beyond their control." *Id.* at 820 (citation omitted). Turning to those administrators within the police chain of command, the court assumed that, as alleged by the plaintiffs, "these officials ordered police to remove the tents, acquiesced in the use of batons to effectuate removal of the tents, and learned that batons had been used during the afternoon protest and injuries had occurred." *Id.* The Ninth Circuit found that the administrators' directive did not "supply the missing connection" between the administrators and the force applied by each officer, particularly where the administrators had no reason to assume that police would use force beyond the bounds of university police policy. *Id.* at 820-21. Nor was personal liability supported by the administrators' alleged awareness that some protestors had been injured during an earlier protest. *Id.* at 821. Noting that "[i]njuries could be caused by lawful uses of the batons or by others in the crowd," the Ninth Circuit found that the administrators' awareness that some protestors had been injured during an afternoon protest did not establish that police had exceeded the bounds of university policy in that protest *or* that they would do so in a future protest. *Id.*

 *Felarca* compels rejection of Plaintiffs' supervisory liability claim. Other than the supervisory positions allegedly held by each Defendant, SAC ¶¶ 25-30, Plaintiffs offer no connection between any of the Defendants and the actions of any federal officer that allegedly caused Plaintiffs injury. Plaintiffs have not identified any officer who allegedly used excessive force against them, let alone shown that the officer was within a particular Defendant's chain of command. And regardless of the

chain of command, Plaintiffs do not offer any plausible, non-conclusory allegations establishing that any of the Defendants issued an unlawful directive to any line-level federal officer to detain or use excessive force against any Plaintiff (or against other protesters). *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008) (detective was not an "integral participant" in alleged unlawful arrest because she was not present when the plaintiff was arrested, nor was there evidence she instructed other detectives to make the arrest or that those detectives consulted with her before making the arrest). Nor would awareness, albeit alleged in a wholly conclusory manner, that some persons had been injured during protests, SAC ¶ 76, establish an awareness that line-level officers either had acted or would act unlawfully. *Felarca*, 891 F.3d at 821.

To the extent that Plaintiffs seek to premise liability on a failure to intervene theory, *see* SAC ¶ 99, 103, 118, there is no basis for application of that theory here. Ninth Circuit case law expressly recognizes that there is no duty to intervene on the part of a law enforcement officer who is not present at the scene of alleged unconstitutional conduct. *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000), *as amended* (Oct. 31, 2000); *see also Bruner v. Dunaway,* 684 F.2d 422, 426-27 (6th Cir. 1982) (holding that officers who were not present at the time of the alleged assault could not be held liable in a section 1983 action). None of the Defendants is alleged to have been present at the scene of Plaintiffs' or any putative class members' injuries; thus, none of the Defendants had any realistic opportunity to intercede to prevent any alleged injuries. *Cunningham*, 229 F.3d at 1290 ("officers who were not present at the time of the shootings could not intercede to prevent their fellow officers from shooting at Cunningham").[11]

---

[11] Plaintiffs' citation to a DHS Policy Statement titled "Duty to Intervene and Report Improper Use of Force," SAC ¶ 99, does not save their claim. Even if there were plausible allegations of a violation of this policy (and there are not), officials sued for a violation of constitutional rights do not forfeit their immunity by violating non-constitutional standards, such as internal guidelines, ethical principles, or regulations. *See Davis v. Scherer*, 468 U.S. 183, 194-96 & n.12 (1984).

Plaintiffs' repeated reliance upon assertions based "on information and belief," *see*, *e.g.*, SAC ¶¶ 72-76, 98, 102, 133, does not save their supervisory liability claim. "In the *post-Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim." *Talk Radio Network Enterprises v. Cumulus Media Inc.*, 271 F. Supp. 3d 1195, 1207 (D. Or. 2017) (quoting *Solis v. City of Fresno*, No. 1:11-CV-00053 AWI GSA, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012) (citing *Twombly*, 550 U.S. at 570)). The "more" requirement is not satisfied in this case by Plaintiffs' reliance on purported facts taken from other federal cases related to the Portland protests. *See* SAC ¶ 76 & n.22. Rule 10(c) does not allow a party to adopt pleadings from a wholly separate action, even if that action is between the same parties. *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 301 F.R.D. 487, 492 (C.D. Cal. 2014) (citing cases). Thus, allegations from these separate proceedings cannot be used to support any claim against the Defendants in this case. *See id.* (striking references in complaint to allegations and exhibits from pleading in a different case).

Plaintiffs' remaining "information and belief" allegations fare no better. As the Supreme Court recognized in *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In *Iqbal*, the Supreme Court held that allegations that the U.S. Attorney General and the FBI Director "knew of, condoned, and willfully and maliciously agreed to subject [plaintiff] to harsh conditions of confinement as a matter of policy" based solely upon discriminatory purpose "amount[ed] to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim." *Id.* at 680-81 (citing *Twombly*, 550 U.S. at 555) (internal quotations marks omitted). Similarly, Plaintiffs' bare allegations of direction, knowledge, or acquiescence, *see* SAC ¶¶ 61, 72-79, 103, 133-34, are "formulaic recitations" of the personal participation requirement for a constitutional claim. "[The Court is] not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556

U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal quotation marks omitted)). Moreover, allegations which purport to hold each named Defendant personally liable for the actions of a collective of "Supervisory Defendants" improperly force the Court to speculate about how non-specific conduct by each of the Defendants could have resulted in a violation of a specific plaintiff's constitutional rights. Like the "supervisory liability" theory *Iqbal* rejected, *see* 556 U.S. at 676-77, Plaintiffs obfuscate the actual conduct of each of the named Defendants, failing to specifically identify what any defendant *personally* did, and how that resulted in a constitutional injury to any plaintiff. These allegations are "not entitled to the assumption of truth," *id.* at 679, and cannot support Plaintiffs' claims. *See Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982) ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.") (citations omitted).

## CONCLUSION

For the reasons stated above, Plaintiffs' Second Amended Complaint fails to state any claims against Defendants Russell, Jones, Smith, Morgan, Burger, and Cline, and should be dismissed as against each of them.

Dated: August 9, 2021

Respectfully Submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

SCOTT ERIK ASPHAUG
Acting United States Attorney

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch

ANDREA W. MCCARTHY
Senior Trial Counsel

*/s/Glenn S. Greene*
GLENN S. GREENE
(New York State Bar No. 2674448)
Senior Trial Attorney
U.S. Department of Justice, Civil Division
Constitutional and Specialized Tort Litigation
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4143
Fax: (202) 616-4314

*Attorneys for Defendants Russell, Jones, Smith, Morgan, Burger, and Cline*

# CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2021, the foregoing was filed electronically through

ECF/CM.

> s/ Glenn S. Greene
> Glenn S. Greene
> Senior Trial Attorney
> U.S. Department of Justice, Civil Division
> Constitutional and Specialized Tort Litigation
> P.O. Box 7146, Ben Franklin Station
> Washington, D.C. 20044
> Telephone: (202) 616-4143
> Fax: (202) 616-4314
> Email: Glenn.Greene@usdoj.gov