IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ANGELICA CLARK**, **ELLEN GASS**, **NATHANIEL WEST**, **ROWAN MAHER**, and **GARRISON DAVIS**, individually and on behalf of all similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>**CHAD WOLF**, Acting Secretary United States Department of Homeland Security; **KENNETH T. CUCCINELLI**, Senior Official Performing the Duties of the Deputy Secretary United States Department of Homeland Security; **GABRIEL RUSSELL**; **ALLEN JONES**; **RUSSEL BURGER**; **ANDREW SMITH**; **MARK MORGAN**; **RICHARD CLINE**; **LEONARD ERIC PATTERSON**; **DONALD WASHINGTON**; **DERRICK DRISCOLL**; **JEFF TYLER**; **FPS SUPERVISORY OFFCIERS NOS. 2, 6, 8, 14, 16, 41, 42, and 44**; **ICE SUPERVISORY OFFICER NO. 1**; **USMS SUPERVISORY OFFICERS CD, CG1, and OT1**; **CBP SUPERVISORY OFFICERS NOS. 1, 2, 85, 87, 89, 90, 17, 91, 28, 94, 95, 96, 33, 98, 100–104, 106, 108, 109, 111, 112, 113, 67, 69, 114, 115, 72, 74, 116, 75, 119, 121, and 122**; and **JOHN DOE SUPERVISORY AND PATROL-LEVEL DEFENDANTS 1–140**; agents of the U.S. | Case No. 3:20-cv-01436-IM<br><br>**OPINION AND ORDER** |

PAGE 1 – OPINION AND ORDER

Marshals Service, Federal Protective Service, U.S. Department of Homeland Security and U.S. Customs and Border Protection, acting in concert and in their Individual capacities,

      Defendants.

David F. Sugerman and Nadia H. Dahab, Sugerman Dahab, 707 SW Washington St., Ste. 600, Portland, OR 97205; David D. Park, Elliot & Park, P.C., 324 SW Abernethy St., Portland, OR 97239; Michelle R. Burrows, Michelle R. Burrows P.C., 1333 Orenco Station Parkway #525, Hillsboro, OR 97124; Jane L. Moisan, People's Law Project, 818 SW 4th Ave. #221-3789, Portland, OR 97204, Erious Johnson, Jr., Harmon Johnson LLC, 1415 Commercial St. SE, Salem, OR 97302; Christopher A. Larsen, Pickett Dummigan McCall LLP, 210 SW Morrison St., 4th Fl., Portland, OR 97204; Gabriel Chase, Chase Law, PC, 621 SW Alder St., Ste. 600, Portland, OR 97205; Joe Piucci, Piucci Law LLC, 900 SW 13th Ave., Ste. 200, Portland, OR 97205. Attorneys for Plaintiffs.

Glenn Greene, United States Department of Justice, P.O. Box 7146, Washington, DC 20044. Attorney for Defendants.

**IMMERGUT, District Judge.**

  This is a class action lawsuit brought by named Plaintiffs Angelica Clark, Ellen Gass, Nathaniel West, Rowan Maher, Robert Evans, and Garrison Davis. ECF 96. The putative class consists of individuals who attended one or more of the protests in support of the Black Lives Matter movement that occurred during July 2020 near the Mark O. Hatfield United States Courthouse in Portland, Oregon, and who were exposed to tear gas. *Id*. at ¶¶ 18–19.[1] Plaintiffs allege that they were subjected to unreasonable use of force and unlawful arrest or detention by federal officers[2] during these protests. *See generally id*. at ¶¶ 113–137. Plaintiffs seeks monetary

---

[1] This "Tear Gas Class" comprises two subclasses: the "Shooting Subclass"—those who were "hit by munitions in or near the protest zone"—and the "Truncheon Subclass"—those who were "beaten . . . in or near the protest zone." *Id*. Plaintiffs have not yet moved for class certification.

[2] Plaintiffs bring claims against Chad Wolf, Kenneth T. Cuccinelli, Gabriel Russell, Allen Jones, Russel Burger, Andrew Smith, Mark Morgan, Richard Cline, Leonard Eric Patterson,

PAGE 2 – OPINION AND ORDER

damages from the federal officers in their individual capacities under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), for alleged violations of Plaintiffs' Fourth Amendment rights. *Id*.

Before the Court now is the Motion to Dismiss brought by Gabriel Russell, Regional Director, Region 10, Federal Protective Service ("FPS"); Allen Scott Jones, Deputy Director of Operations, FPS; Richard Cline, Principal Deputy Director, FPS; Mark Morgan, former Acting Commissioner, United States Customs and Border Protection ("CPB"); Russel Burger, former United States Marshal for the District of Oregon, United States Marshals Service ("USMS"); and Andrew Smith, Assistant Director for Tactical Operations, USMS (collectively, "Defendants"). ECF 101 at 10. Defendants seek to dismiss all claims asserted against them pursuant to Federal Rule of Civil Procedure 12(b)(6), on the bases that a *Bivens* remedy is inappropriate in these circumstances, and that even if this Court were to recognize such a remedy, Defendants are entitled to qualified immunity. ECF 101 at 2, 10–11.[3]

This is a lawsuit about whether certain federal officers, in this case Defendants Burger, Cline, Jones, Morgan, Russell, and Smith, should be held personally liable under *Bivens* for conduct that occurred during the July 2020 protests in Portland, Oregon. This Court is not asked to, nor will it, opine on the merits of the July 2020 protests or the law enforcement response to those protests. Nor is this Court tasked with determining whether Plaintiffs deserve a remedy in

---

Donald Washington, Derrick Driscoll, and Jeff Tyler, as well as "FPS Supervisory Officers Nos. 2, 6, 8, 14, 16, 41, 42, and 44," "ICE Supervisory Officer No. 1," "USMS Supervisory Officers CD, CG1, and OT1," "CBP Supervisory Officers Nos. 1, 2, 85, 87, 89, 90, 17, 91, 28, 94, 95, 96, 33, 98, 100–104, 106, 108, 109, 111, 112, 113, 67, 69, 114, 115, 72, 74, 116, 75, 119, 121, and 122," and "John Doe Supervisory and Patrol-Level Defendants 1–140." ECF 96.

[3] This Court previously dismissed similar claims as to Chad Wolf, former Acting Secretary of the Department of Homeland Security ("DHS"), and Kenneth Cuccinelli, former Senior Official Performing the Duties of Deputy DHS Secretary. ECF 91.

the abstract. Rather, this Court must determine—on the facts presented here and bound by Supreme Court precedent—whether Plaintiffs may seek damages from these Defendants under *Bivens*. Because this Court finds that Plaintiffs' claims against these Defendants present a new *Bivens* context and special factors counsel hesitation, a *Bivens* remedy is inappropriate and Plaintiffs' claims against these Defendants must be dismissed. Because this Court determines a *Bivens* remedy is inappropriate, this Court declines to address Defendants' arguments regarding qualified immunity.

## STANDARDS

A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts all well-pleaded factual allegations in the complaint as true and construes them in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, the court need not credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## DISCUSSION

In *Bivens*, the Supreme Court recognized for the first time an implied right of action against federal officers for constitutional violations. The Court held that plaintiff Webster Bivens was entitled to sue federal agents for damages arising out of an unlawful arrest and search, in violation of his Fourth Amendment rights. *Bivens*, 403 U.S. at 389–90. In the years after *Bivens*, the Court also recognized implied rights of action under the Constitution for damages in two

PAGE 4 – OPINION AND ORDER

other contexts. *See Davis v. Passman*, 442 U.S. 228 (1979) (recognizing a damages remedy for a gender discrimination claim against a United States Congressman under the equal protection component of the Fifth Amendment Due Process Clause); *Carlson v. Green*, 446 U.S. 14 (1980) (recognizing a damages remedy against federal prison officials for failure to provide adequate medical treatment under the Eighth Amendment's Cruel and Unusual Punishment Clause). The "core purpose" of *Bivens* is "deterring individual officers from engaging in unconstitutional wrongdoing." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001); *see also Reid v. United States*, 825 F. App'x 442, 444 (9th Cir. 2020) ("A claim for damages based on individualized mistreatment by rank-and-file federal officers is exactly what *Bivens* was meant to address.")

In the four decades since these *Bivens*, *Davis*, and *Carlson* were decided, the Supreme Court has repeatedly refused to add to the claims allowed under *Bivens*. *See Hernandez v. Mesa*, 140 S. Ct. 735, 742–43 (2020) (collecting cases). Recently, the Supreme Court made clear that expanding the *Bivens* remedy to any new context or category of defendants "is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (quoting *Iqbal*, 556 U.S. at 675); *see also Iqbal*, 556 U.S. at 675 (explaining the Court is "reluctant to extend *Bivens*" "[b]ecause implied causes of action are disfavored"). The Court explained that to do so constitutes a "significant step," *Abassi*, 137 S. Ct. at 1856, which risks offending separation-of-powers principles, as "Congress is the best positioned to evaluate 'whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government' based on constitutional torts." *Hernandez*, 140 S. Ct. at 742 (quoting *Abassi*, 137 S. Ct. at 1856).

In considering possible extensions of *Bivens*, courts engage in a "two-step inquiry," "first inquir[ing] whether the request involves a claim that arises in a new context or involves a new

PAGE 5 – OPINION AND ORDER

category of defendants," and then, if so, "ask[ing] whether there are any special factors that counsel hesitation" before extending the *Bivens* remedy. *Id.* at 743 (internal citations, alterations, and quotation marks omitted). The "most important question" guiding this analysis is "who should decide whether to provide for a damages remedy, Congress or the courts?" *Id.* at 750 (quoting *Abbasi*, 137 S. Ct. at 1857) (internal quotation marks omitted).

### A. New Context Analysis

The Supreme Court's understanding of a "new context" in a *Bivens* analysis is "broad." *Hernandez*, 140 S. Ct. at 743. A context is "'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court.'" *Id.* (quoting *Abbasi*, 137 S. Ct. at 1859).

As the Supreme Court explained in *Abbasi*:

> Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1859–60. The Supreme Court cautions that "even a modest extension is still an extension," and has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Id.* at 1857, 1864 (internal quotation marks omitted) (quoting *Malesko*, 534 U.S. at 68); *see also Loumiet v. United States*, 948 F.3d 376, 382 (D.C. Cir. 2020) (noting that "a new context is present whenever the plaintiff seeks damages from a new category of defendants" (internal quotation marks and citation omitted)); *Boule v. Egbert*, 998 F.3d 370, 387

(9th Cir. 2021) (finding an extension, albeit "modest," where the defendant "is an agent of the border patrol rather than of the F.B.I.").

### 1. Vicarious Liability

"[T]he Supreme Court acknowledged that *Bivens* claims cannot proceed on a theory of *respondeat superior*, but must instead plead that a supervisor, by her 'own individual actions,' violated the Constitution." *Chavez v. United States*, 683 F.3d 1102, 1109 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 676); *see also Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). "*Bivens* is not designed to hold officers responsible for acts of their subordinates;" its purpose is rather to "deter the *officer*." *Abbasi*, 137 S. Ct. at 1860 (internal quotation marks and citation omitted).

To finds a *Bivens* remedy based on vicarious liability and the conduct of Defendants' subordinates would extend *Bivens* to a new context and contravene the Supreme Court's directives. *See Pereira Luna v. Thomas*, No. 2:19-CV-00431-JFW (AFM), 2020 WL 473133, at *7 (C.D. Cal. Jan. 28, 2020) (finding "any claims . . . against supervisory officials would also arise in a new context because the Supreme Court has not extended a *Bivens* remedy against any federal official under a theory of respondeat superior"). Moreover, to so extend implicates a different rank of officer—supervisory—and specificity of conduct—vicarious—than were at issue in *Bivens*. *Abbasi*, 137 S. Ct. at 1859–60; *see also Mejia-Mejia v. U.S. Immigr. & Customs Enf't*, No. 18-1445 (PLF), 2019 WL 4707150, at *4 (D.D.C. Sept. 26, 2019) (explaining "the implied causes of action recognized by *Bivens* and its limited progeny have generally been made against individuals . . . who have engaged in some personal misconduct in a direct and particularized interaction with a plaintiff, not against individuals who have applied a general policy that affected plaintiff and others in similar ways").

PAGE 7 – OPINION AND ORDER

**2. Supervisory Liability**

Plaintiffs contend that "[t]hey seek only to hold certain Defendants liable as supervisors and integral participants in the use of unconstitutional, egregious, and excessive force on Plaintiffs and members of the putative class over the course of 30 consecutive days in July 2020." ECF 107 at 20. Under *Bivens*, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S at 677. In the Fourth Amendment context, "a supervisor faces liability . . . only where it would be clear to a reasonable [supervisor] that his conduct was unlawful in the situation he confronted." *Chavez v. United States*, 683 F.3d 1102, 1110 (9th Cir. 2012) (internal quotation marks omitted). The Ninth Circuit has also explained that "[a]n official may be liable as a supervisor only if either (1) he or she was personally involved in the constitutional deprivation, or (2) a sufficient causal connection exists 'between the supervisor's wrongful conduct and the constitutional violation.'" *Felarca v. Birgeneau*, 891 F.3d 809, 819–20 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)).[4] "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id* at 820. (internal quotation marks omitted) (quoting *Starr*, 652 F.3d at 1207–08). Nevertheless, a supervisor "may not be held liable merely for being present at the

---

[4] Though *Felarca* and *Starr* are actions under 42 U.S.C. § 1983, the Ninth Circuit has explained that "[a]lthough 'more limited in some respects,' a *Bivens* action is the federal analog to an action against state or local officials under § 1983." *Starr*, 652 F.3d at 1206 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006)); *see also Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991) ("Actions under § 1983 and those under *Bivens* are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*."). Accordingly, this Court applies the standard set forth in *Felarca* and Starr for supervisor liability to the *Bivens* context in this case.

scene of a constitutional violation or for being a member of the same operational unit as a wrongdoer." *Id*.

Plaintiffs' Second Amended Complaint contains ten allegations specifically referencing conduct by Defendants Burger, Cline, Jones, Morgan, Russell, and Smith.[5] *See* ECF 96 at ¶¶ 25–30, 72–73, 82, 92.

### a. Defendant Cline

Plaintiffs allege that Defendant Cline "was the Principal Deputy Director of FPS" and "responsible for the oversight, direction, and control of Patrol-Level Defendants" in Portland. *Id*. at ¶ 30. Plaintiff additionally allege that Cline attended a press conference on July 21, 2020 with then-Acting Director of the Department of Homeland Security ("DHS"), Chad Wolf, which Defendant Morgan also attended. *Id*. at ¶ 82.

As pleaded, Plaintiffs' allegations as to Cline are insufficient to establish liability under the relevant Fourth Amendment standards. There is no allegation that Cline was "personally involved" in any Fourth Amendment violation. *See Felarca*, 891 F.3d at 819–20. Nor is there any allegation upon which this Court can find that a "sufficient casual connection exists"

---

[5] As in its prior Opinion, this Court declines, without more, to summarily attribute Plaintiffs' allegations involving "Supervisory Defendants" to Defendants Burger, Cline, Jones, Morgan, Russell, and Smith. *See* ECF 91 at 6 n.3. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her *own misconduct*" in a *Bivens* action. *Iqbal*, 556 U.S. at 677 (emphasis added); *see also Ivey v. Bd. of Regents of the Univ. of Alaska* 673 F.2d 266, 268 (9th Cir. 1982) ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.") (citations omitted). Underscoring the conclusory nature of these general allegations, at oral argument on this Motion to Dismiss, Plaintiffs' counsel conceded that some of the "supervisory defendants," to whom Plaintiffs seeks to attribute these allegations, were not present in Portland, Oregon during the relevant time period, but rather located in Washington, DC. *See Chavez*, 683 F.3d at 1110 ("The Court discounts, as it must, the plaintiffs' wholly conclusory allegation that the supervisory defendants 'personally reviewed and, thus, knowingly ordered, directed, sanctioned or permitted' the allegedly unconstitutional stops.").

between Cline's conduct and any constitutional violations purportedly committed by FPS . *See id*. The Complaint merely alleges that Cline was a supervisor and that he was present at a press conference. Plaintiffs have pleaded no facts that Cline directed, condoned, or was otherwise aware of any alleged misconduct, and therefore the Complaint does not support a finding that Cline is properly liable for the alleged misconduct under *Bivens*. *See Chavez*, 683 F.3d at 1111 (finding "no factual basis for imputing any such knowledge" of constitutional violations to supervisors "by virtue of [their] responsibilities"); *Iqbal*, 556 U.S. at 676 (requiring a plaintiff to "plead that each Government-official defendant, through his own individual actions, has violated the Constitution"). Plaintiffs have not stated a Fourth Amendment claim against Cline. As stated above, "*Bivens* is not designed to hold officers responsible for acts of their subordinates," *Abbasi*, 137 S. Ct. at 1860, and to do so here would extend *Bivens* to an entirely new context.

### b. Defendants Burger, Morgan, Jones, Smith, and Russell

Plaintiffs allege that Defendant Russell "was a Regional Director with the DHS's FPS Region 10," "was the Commander of the DHS Rapid Deployment Force for Operation Diligent Valor and Incident Commander with fourth-line daily operational control," and "was responsible for, and exercised tactical direction and control over [the DHS forces]." ECF 96 at ¶ 25. Defendants Jones, Burger, Smith, and Morgan held various supervisory positions in FPS, USMS, and CPB. *Id*. at ¶¶ 26–29.[6] Plaintiffs allege that all five Defendants "knew that federal agents

---

[6] Specifically, Jones "was the Deputy Director for Field Operations for DHS FPS Region 10 and was the Deputy Incident Commander of all DHS forces [in] Portland," and "exercised headquarters oversight, direction, and control over the conduct involved in Operation Diligent Valor," *id*. at ¶ 26; Burger "was the U.S. Marshal for the District of Oregon" and "was responsible for and exercised tactical direction and control over all USMS forces stationed in or deployed to Portland," *id*. at ¶ 27; Smith "was employed by the USMS as the Assistant Director for the Tactical Operations Division and was responsible for and exercised tactical direction and control over USMS forces" in Portland, *id*. at ¶ 28; and Morgan "was the Acting Commissioner

PAGE 10 – OPINION AND ORDER

routinely left federal property to engage in crowd control and that such agents did so on numerous occasions without issuance of warnings or dispersal orders and in circumstances in which federal agents were without lawful authority to issue such orders." *Id*. at ¶ 73. They allege that Russell, Smith, and Jones "manned the 'Incident Command Post' or 'Emergency Operations Center' within the Hatfield Courthouse and observed live feed video of federal agents' use of excessive force and unlawful detention against peaceful protesters, photojournalists, members of the press, and legal observers." *Id*. at ¶ 72. Additionally, Plaintiffs allege that Morgan attended the July 21, 2020 press conference, *id*. at ¶ 82, and that he stated, on July 29, 2020, that "federal officers 'are not leaving Portland' until DHS deemed that 'the violent criminal activity' was over," *id*. at ¶ 92.

As with Cline, Plaintiffs do not allege that these Defendants personally and directly committed any Fourth Amendment violation. *See Felarca*, 891 F.3d at 819–20. Rather, the crux of the allegations are that Burger and Morgan "knew" officers "engage[d] in crowd control" at times without proper or lawful dispersal orders, ECF 96 at ¶ 73, and Russell, Smith, and Jones "manned" the command post within the Hatfield Courthouse and "observed" excessive force and unlawful detention, *id*. at ¶ 72.

Assuming, arguendo, that these allegations are sufficient to plead Fourth Amendment liability under *Felarca* and *Chavez*, a *Bivens* remedy here arises in a new context. Though Plaintiffs urge otherwise, the Supreme Court has made clear that the new-context inquiry is "broad." *Hernandez*, 140 S. Ct. at 743. "A context [is] 'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Id*. (quoting *Abbasi*, 137 S.

---

of CBP" and "authorized and oversaw the deployment of CPB's Border Patrol Tactical Unit" to Portland, *id*. at ¶ 29.

PAGE 11 – OPINION AND ORDER

Ct. at 1859). The claims against these Defendants implicate a new, meaningfully different context.

The most analogous of the Supreme Court's *Bivens* cases is *Bivens* itself, in which the Court implied a remedy for an excessive force claim. "There, the plaintiff alleged that federal narcotics agents violated his Fourth Amendment rights by arresting him, handcuffing him in his home, and searching his home without probable cause or a search warrant." *Quintero Perez v. United States*, 8 F.4th 1095, 1104–05 (9th Cir. 2021) (citing *Bivens*, 403 U.S. at 389–90). That *Bivens* and the instant case both invoke the Fourth Amendment is not sufficient to end the new-context inquiry. *Hernandez*, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."). In contrast to the facts in *Bivens*, here, the claims arise out of measures taken during protests in downtown Portland, which are alleged to have occurred pursuant to a "de facto" policy associated with Operation Diligent Valor and multiple federal agencies. *See* ECF 96 at ¶¶ 134–35. No Defendant is alleged to have directly and personally participated in the conduct, or to have direct knowledge of any misconduct relating to a named Plaintiff. *See Chavez*, 683 F.3d at 1111 (finding liability where the defendant "face[d] liability not only as a supervisor, but also for his direct participation in the [vehicle] stops," where the defendant "twice personally stopped" the vehicle).[7] The alleged constitutional deprivations here involve "intervening steps," which "bear[ ] little resemblance to the straightforward claims from *Bivens*." *Farah v. Weyker*, 926 F.3d 492, 499 (8th Cir. 2019); *see also Schwarz v. Meinberg*, 761 F. App'x 732, 735 (9th Cir.), *cert. denied,* 140 S. Ct. 468 (2019)  ("[E]xtending *Bivens* remedies to

---

[7] Even if Defendants had directly participated in the allegedly unconstitutional conduct, the Ninth Circuit has recently gone so far as to find a new context based on the defendant being "an agent of the border patrol rather than of the F.B.I." *Boule*, 998 F.3d at 387.

Schwarz's claims against regional and national BOP officials, individuals who lack direct connection to Schwarz's grievances, undermines the purpose of *Bivens* liability—to deter individual government officers, not their supervisors or the agency, from engaging in unconstitutional conduct."). "[A] modest extension is still an extension," *Abbasi*, 137 S. Ct. at 1864, and this case seeks to extend *Bivens* to a new context.

Plaintiffs argue to the contrary and cite *Abbasi* for the proposition that Defendants' "strategiz[ing], direct[ing], and deploy[ing] certain crowd-control and dispersal tactics . . . and . . . aware[ness] of, direct[ing], and overs[eeing] repeated incidents of excessive force or wrongful detention," "is a classic context for a *Bivens* remedy against a supervisory-level official." ECF 107 at 23–24. In *Abbasi*, the Supreme Court "conclude[d] that the prisoner abuse allegations against [a prison warden based on deliberate indifference] state a plausible ground to find a constitutional violation *if* a *Bivens* remedy is to be implied." *Abbasi*, 137 S. Ct. at 1864 (emphasis added). But the Court did not then imply a remedy; rather the Court found that "the new-context inquiry is easily satisfied," and remanded for a "special factors analysis." *Id*. at 1864–65; *see also* ECF 110 at 10–11. On this Court's reading, though the *Abassi* Court may have contemplated *Bivens* liability for a supervisor, the Court by no means endorsed such a finding. Given that the "watchword is caution," this Court declines to read *Abassi* so broadly.

Nor does *Carlson* require this Court to find otherwise. The factual—and legal—scenario presented in *Carlson* is "clearly dissimilar" from the facts alleged here. *Quintero Perez*, 8 F.4th at 1104 n.4 (declining to consider *Carlson* when analyzing whether to apply *Bivens* to alleged Fourth Amendment violations). In *Carlson*, the plaintiff's estate sued "federal prison officials" alleging violations of the Eighth Amendment, 446 U.S. at 16, including the chief medical officer who was "directly responsible for the prison medical services," but who "did not provide any

PAGE 13 – OPINION AND ORDER

emergency procedure for those times when a physician was not present," *Green v. Carlson*, 581 F.2d 669, 671 (7th Cir. 1978). Though not directly addressed, the Supreme Court in *Carlson* contemplated liability for a defendant in a supervisory role—the chief medical officer—for Eighth Amendment violations. *See Carlson*, 446 U.S. at 16 n.1 (describing alleged deliberate indifference of the officials to the prisoner's severe medical condition). This Court notes first that when *Carlson* was decided, the Supreme Court "followed a different approach to recognizing implied causes of action" described as the "*ancien regime*." *Abbasi*, 137 S. Ct. at 1855 (internal quotation marks omitted) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001)). The Supreme Court has since endorsed a "far more cautious course." *Id*. Second, the Supreme Court did not consider the sufficiency of the allegations in *Carlson*. *See* ECF 120 at 2. Further, even if those allegations suffice under the Eighth Amendment standard, the Supreme Court has not endorsed such an extension under the Fourth Amendment, and the specificity of the allegations described by the Court in *Carlson* differ from those in the instant case. *See Carlson*, 446 U.S. at 16 n.1 (noting officials were "fully apprised of the gross inadequacy" at the prison, "kept [the prisoner] in that facility against the advice of doctors," and "failed to give him competent medical attention"). Accordingly, this Court finds that the context presented in this case meaningfully differs from that presented in *Carlson*.[8]

---

[8] This Court is aware that the Honorable Michael H. Simon recently held that the plaintiffs in *Pettibone v. Biden* stated a Fourth Amendment claim against Russell and that their "claims against Defendant Russell do not involve a new context or a new type of defendant for the purposes of *Bivens*." No. 3:20-CV-1464-YY, 2021 WL 6112595, at *4, 7 (D. Or. Dec. 27, 2021); *see also* ECF 119. "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (internal quotation marks and citation omitted). In other words, "district court decisions—unlike those from the courts of appeals—do not necessarily settle constitutional standards." *Id*. As explained in this Opinion, on this Court's analysis, *Carlson* is sufficiently distinguished from the facts alleged here such that a new context is implicated. Moreover, in *Pettibone*, Judge Simon credited Plaintiffs' allegations

B.  **Special Factors Analysis**

Having found that Plaintiffs' *Bivens* claims arise in a new context, this Court proceeds to conduct a special factors analysis and "ask whether there are factors that counsel hesitation" in extending *Bivens* to Plaintiffs' claims. *See Hernandez*, 140 S. Ct. at 743. "The [Supreme] Court's precedents now make clear that a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Abbasi*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18). The Supreme Court has not defined "special factors counselling hesitation," but has indicated that "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1857–58. "[T]o be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." *Id*.; *see also Hernandez,* 140 S. Ct. at 743 ("[I]f we have reason to pause before applying *Bivens* in a new context or to a new class of defendants—we reject the request."); *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009) (describing the threshold for a factor to counsel hesitation as "remarkably low").

---

that "Russell had specific knowledge of the conduct against Plaintiffs Christopher David and Mark Pettibone" and that he "directed or ordered . . . some of the unlawful arrests," explaining that "Plaintiffs' claims against Defendant Russell largely focus on his personal conduct in Portland." *Pettibone*, 2021 WL 6112595, at *5–6; *see also* Amended Complaint at ¶ 25, *Pettibone,* 2021 WL 6112595, ECF 18 ("[Russell] was aware of the use of force against protesters by federal officers, including but not limited to the use of force against Plaintiff Christopher David. On information and belief, he also directed and was aware of the arrests of protesters, including Plaintiff Mark Pettibone."). There are no such allegations that any Defendant had specific knowledge of constitutional deprivations suffered by a named Plaintiff in the instant case. This Court's own analysis of the facts alleged in this case also lead it to conclude that special factors counsel against extending *Bivens* to this new context. *Compare Pettibone*, 2021 WL 6112595, at *7–8.

PAGE 15 – OPINION AND ORDER

The parties disagree whether Plaintiffs have "alterative, existing process[es]" to protect their interests. *Abassi*, 137 S. Ct. at 1858. "[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not." *Id*. at 1863. Defendants contend that Plaintiffs could seek injunctive or declaratory relief, relief under the Administrative Procedures Act, relief pursuant to the Federal Tort Claims Act ("FTCA"), or an investigation by the DHS Inspector General. ECF 101 at 32–34. Plaintiff argues that these proposed alternatives are not sufficiently meaningful to preclude a *Bivens* remedy. ECF 107 at 33 (noting that injunctive or declaratory relief cannot compensate Plaintiffs for past injuries, the APA is inapplicable for the claims, and the FTCA is not a bar to *Bivens* claims). Although Plaintiffs may be correct about the unavailability of a satisfactory alternative remedy, the lack of an adequate alternative remedy is not dispositive in determining whether a *Bivens* action to award money damages against the individual officers is appropriate. *Quintero Perez*, 8 F.4th at 1105 (citing *Schweiker v. Chilicky*, 487 U.S. 412, 421–22 (1988)). This Court must consider whether special factors counsel against a remedy. *Id*.

This Court finds that Plaintiffs' claims against Defendants Burger, Cline, Jones, Morgan, Russell, and Smith present special factors counseling against extending *Bivens* to the circumstances present in this case. First, as this Court found in its prior Opinion, ECF 91, *Bivens* suits are not the appropriate mechanisms by which to litigate objections to government policies of widespread applicability. *See Abassi*, 137 S. Ct. at 1860; *Malesko*, 534 U.S. at 74 (explaining that a *Bivens* action is not a "proper vehicle for altering an entity's policy"). Though Plaintiffs frame their claims against these Defendants as "conventional Fourth Amendment claims that arise directly under *Bivens*," and claim that they do not seek to challenge the policy decisions underlying the deployment of federal officers to Portland, *see* ECF 107 at 22, Plaintiffs' claims against supervisory officers implicate the implementation of widespread policies during the

PAGE 16 – OPINION AND ORDER

protests, including by certain Defendants who were not even present in Portland during the protests. *See, e.g.*, ECF 96 at ¶ 5 ("To implement [President Trump's] Order, Defendants deployed militarized federal agents to Portland."); *id.* at ¶ 134 ("Supervisory Defendants . . . adopted and implemented a de facto policy of deployment of excessive force . . . ."). Further, extending *Bivens* remedies to claims against individuals who lack a direct and particularized connection to Plaintiffs' harms would undermine the purpose of *Bivens* liability—"to deter individual federal officers from committing constitutional violations." *Malesko*, 534 U.S. at 70; *Quintero Perez*, 8 F.4th at 1105–06 (dispensing with claim against Border Patrol Chief because "he had no direct involvement in the shooting," and *Bivens* is not the proper vehicle to challenge an agency's policy).

These considerations counsel caution and suggest to this Court that Congress is the more appropriate body "to consider and weigh the costs and benefits of allowing a damages action to proceed" against these Defendants. *Abassi*, 137 S. Ct. at 1857–58. Where there are "sound reasons to think Congress might doubt the efficacy or necessity of [the] damages remedy" Plaintiffs seek, this Court must refrain from creating one. *Id.* at 1858. Plaintiffs' *Bivens* claims against Defendants Burger, Cline, Jones, Morgan, Russell, and Smith must be dismissed. Accordingly, the Court declines to reach Defendants' qualified immunity arguments.

## CONCLUSION

For the foregoing reasons, Defendants Burger, Cline, Jones, Morgan, Russell, and Smith's Motion to Dismiss, ECF 101, is GRANTED. Plaintiff's claims against these Defendants are DISMISSED for failure to state a claim.

**IT IS SO ORDERED**.

DATED this 3rd day of February, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge